COMMONWEALTH *vs.* OTIS C. MCGAHEE.

Suffolk.   October 4, 1984. — January 24, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Indictment, Grand jury proceeding, Instruc-
tions to jury. *Grand Jury. Identification. Evidence,* Other offense.

The circumstance that the grand jury which indicted a defendant for robbery
and murder was never informed that a certain person, whose photographic
identification of the defendant had been presented through a police wit-
ness, had been unable to identify the defendant later at a probable cause
hearing did not impair the integrity of the grand jury's proceeding where
it had received sufficient other evidence of identification to support an
indictment. [745-748]

At a criminal trial no prejudice resulted from the prosecutor's questions to
a certain witness referring to an attempt by the witness to buy marihuana
from the defendant where this questioning, which was abandoned after
a belated objection, would have been allowable for the purpose of show-
ing that the witness had a reason to identify the defendant and call out
to him. [748-749]

At the trial of indictments for robbery and murder the evidence, including
testimony identifying the defendant as the person observed running from
the store where the crimes occurred, and indications of the defendant's
consciousness of guilt, were sufficient to warrant denial of required
findings of not guilty. [749-750]

At a criminal trial no substantial risk of a miscarriage of justice was presented
by the judge's omission of the words "presumption of innocence" from
his charge to the jury, to which the defendant made no adequate objection,
where the language of the instructions as given fulfilled the protective
purpose of a specific reference to the presumption of innocence. [750-
753]

INDICTMENTS found and returned in the Superior Court De-
partment on April 20, 1983.

A motion to dismiss was heard by *William H. Carey,* J.,
and the cases were tried before him.

*Daniel G. Harrington (Daniel J. Harrington* with him) for
the defendant.

*Paul J. McCallum,* Assistant District Attorney, for the Commonwealth.

NOLAN, J.   The defendant, Otis C. McGahee, appeals from convictions entered October 21, 1983, on indictments charging murder in the first degree and armed robbery. The issues on appeal concern alleged errors in the grand jury proceedings, the admission of an unsubstantiated allegation of prior criminal activity, the trial judge's denial of the defendant's motion for a required finding of not guilty and a jury instruction regarding the presumption of innocence. The defendant also seeks relief pursuant to our review power under G. L. c. 278, § 33E. For the reasons set forth below, we affirm the defendant's convictions and grant no relief under § 33E.

The events leading to the defendant's indictments are summarized as follows. On the afternoon of July 28, 1982, Charles Morreale, a truck driver, completed a delivery of soda at the rear of Joe's Variety Store in Dorchester. Jose Vasquez, a store employee, then brought the soda from the rear door to the basement. Morreale entered the front of the store where Manuel Paulino, the proprietor and victim, paid him. Morreale bought a drink and a snack and returned to his truck. The truck was parked alongside the front entrance of the store at a point where the passenger door was at the curb about opposite the front door of this store.

While Morreale sat eating in his truck, he heard a bang that sounded like a slamming door. About a minute later, he saw someone come out of the store and run down the street. Morreale observed this individual, later identified as the defendant, putting his hand in his jacket as he was running out the door.

After he finished eating, Morreale went into the store. He observed Vasquez loading the soda into a beverage chest. Initially, he did not see Paulino. Morreale looked in the back of the store and then checked behind the counter. There he observed Paulino lying on the floor. Morreale went around the counter and saw that Paulino was bleeding from the head. The cash drawer was open and contained only some small change. Earlier, the drawer had contained paper money, food stamps, and change. Morreale helped Paulino to the front of the store and remained with him until the police arrived.

Morreale described the person he saw running from the store to the police when they arrived. The following day he went to Boston police headquarters and described this individual to a police artist. As a result of this description, the artist made a composite sketch of the individual Morreale saw running from the store. On the day after his visit to police headquarters, Morreale went to District 11 police station in Dorchester and picked the defendant's picture from a photographic array.

During the investigation, police detectives spoke with Gloria Huguley and Michael Reed. Huguley lived with her family in the third floor apartment across from the store. Reed was her boy friend at the time and was visiting her when the incident occurred. Huguley testified that she and Reed were sitting in the front room of her apartment. Reed was looking out the window in the direction of the variety store. Reed testified that he had then told Huguley that a person running out of the store looked like someone he knew by the name "Otis." When Reed talked to the police, he picked the defendant's photograph from an array. Reed testified that in picking the photograph he told the police that he recognized the defendant from high school but not as the individual running from the store. Various points of Reed's testimony were contradicted by Huguley and a police detective.[1]

The police made several attempts to serve an arrest warrant at the defendant's home. In January, 1983, the defendant was arrested in Kansas City, Missouri, and returned to Boston.

1. *Grand jury indictments.* The defendant contends that the Commonwealth's failure to present certain exculpatory evidence to the grand jury impaired the integrity of those proceedings. In January, 1983, Morreale viewed a lineup of the defendant and several others at the probable cause hearing. Morreale did not select the defendant as the individual he saw running

---

[1] Huguley testified that she was in the room with Reed at the time. Reed stated that she was not. The police detective testified that Reed picked the defendant's photograph as being a photograph of the person running from the store. The contradictory testimony was admitted solely on the question of credibility with a proper limiting instruction. The defendant does not question this action.

from the scene. Morreale testified at this hearing that he helped create a composite sketch with the police artist and that he was satisfied that this sketch looked like the person he saw running from the scene. The sketch resembles the defendant. Morreale also testified at the probable cause hearing that he selected the defendant's photograph as that of the person running from the scene.

Morreale did not testify before the grand jury. The Commonwealth presented his testimony through a police detective. That detective testified that Morreale had seen a man running from the store and that Morreale had described the man to the police. The detective described the identification process and the resultant composite sketch. He also testified that Morreale identified the defendant from a photographic array as the person running from the scene. Neither the detective nor the prosecutor informed the grand jury that Morreale had failed to identify the defendant in person at the probable cause hearing.

The defendant asserts that presentation of Morreale's identification of the defendant by hearsay testimony without informing the grand jury of the failed identification impaired the integrity of the indictments. The defendant filed a pretrial motion to dismiss the indictments based on this assertion. This motion was denied. The judge found that the integrity of the grand jury proceedings was not impaired and that the indictments were based on sufficient evidence to withstand attack.

Prosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury. *Commonwealth* v. *O'Dell,* 392 Mass. 445, 447 (1984). When the prosecutor possesses evidence which would greatly undermine the credibility of evidence likely to affect the grand jury's decision to indict, the prosecutor must alert the grand jury to the existence of such evidence. *Commonwealth* v. *Connor,* 392 Mass. 838, 854 (1984). "[A]n indictment may stand which is based in part or altogether on hearsay." *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 655 (1979). However, when a portion of a hearsay statement is withheld from a grand jury in a manner that distorts the remainder's presentation, the indictment must be dismissed. *Commonwealth* v. *O'Dell, supra.* Our review of the propriety

of any indictment is limited to determining whether the grand jury received sufficient evidence to find probable cause for arrest, *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982), and whether the integrity of the grand jury proceedings was impaired. *Commonwealth* v. *Gibson,* 368 Mass. 518, 525 (1975). We review this indictment to determine whether the withheld exculpatory evidence would greatly undermine credibility or would distort the identification evidence presented to the grand jury.

Reed and Huguley testified before the grand jury regarding the defendant's identity. Reed testified that, at the time of the incident, he thought the person running from the scene looked like the defendant. However, he stated that he never said it was the defendant. This testimony was contradicted by the detective and Huguley. Reed's and Huguley's grand jury testimony was about the same as their testimony given at the probable cause hearing. The grand jury saw the composite sketch which resembled the defendant and the photograph of the defendant which Morreale and Reed selected from the array. It is unlikely that the impeachment of the credibility of Morreale's identification by his failure to identify the defendant at the probable cause hearing would have affected the grand jury's decision to indict. Furthermore, this evidence was not all that tied the defendant to the crime. The other testimony and the composite sketch sufficiently support an indictment.

Nor does Morreale's failure to identify the defendant at the probable cause hearing distort his earlier identification of the defendant within days of the incident. In *O'Dell,* the prosecutor presented an inculpatory portion of the hearsay statement but omitted the remaining exculpatory portion. *Commonwealth* v. *O'Dell, supra* at 448. In this case, the omission concerns a failure to make a later identification. An identification made closer to the time of the offense often has greater testimonial value than a later identification. See *Commonwealth* v. *Torres,* 367 Mass. 737, 739 (1975). In these circumstances, the omission did not distort the evidence presented to the grand jury. See *Commonwealth* v. *Lincoln,* 368 Mass. 281, 283-286 (1975). We do not find any conduct before the grand jury that

warrants dismissal. The judge properly denied the defendant's motion to dismiss the indictments.

2. *The admission of unsubstantiated allegations of criminal activity.* The Commonwealth presented the testimony of Michael Reed because it tended to identify the defendant as the individual running from the store. Reed denied that he said he saw the defendant running from the store. Rather, he testified that he only said that it looked like the defendant. The prosecutor questioned Reed in a manner which sought to elicit his earlier identification (see note 1, *supra*). Two questions contained reference to Reed's alleged attempt to buy marihuana from the defendant.[2] After these questions were asked and answered, defense counsel objected and requested a mistrial.

---

[2] THE PROSECUTOR: "And when you went to that window, sir, did you call out somebody's name?"

THE WITNESS: "No, I didn't — yeah, at the time I did."

THE PROSECUTOR: "And whose name did you call out, sir?"

THE WITNESS: "I said that looked like the person I know by the name of Otis."

THE PROSECUTOR: "And who did you say that to?"

THE WITNESS: "I said it to Gloria."

THE PROSECUTOR: "And that was on July 28, 1982, is that correct?"

THE WITNESS: "Yes."

THE PROSECUTOR: "And in fact you did know Otis, didn't you, sir?"

THE WITNESS: "From high school, yes."

THE PROSECUTOR: "The Jeremiah Burke High School?"

THE WITNESS: "Yes."

THE PROSECUTOR: "And did you say anything else? Did you yell out anything else besides 'Otis'?"

THE WITNESS: "No, I did not."

THE PROSECUTOR: "Were you trying to get his attention to buy some reefer?"

THE WITNESS: "I was if it was the person I thought it was."

THE PROSECUTOR: "So that's why you called out, isn't that correct?"

THE WITNESS: "I didn't holler out his name. I just said I thought it was a person I knew from high school."

THE PROSECUTOR: "And that you wanted to buy some reefer from him?"

DEFENSE COUNSEL: "Your Honor, I object to this. May I approach the bench?"

THE JUDGE: "Yes, the objection is sustained. And, as far as the leading characteristics of this inquiry, I direct [the prosecutor], not to continue to lead."

DEFENSE COUNSEL: "And I would also, Your Honor, ask at this time for a mistrial, and I would like to approach the bench concerning it."

Defense counsel did not move that the questions and answers be struck.

Defense counsel's failure to interpose a timely objection and to request that the questions and answers be struck precludes our appellate review of this as error. *Commonwealth* v. *Baptiste,* 372 Mass. 700, 707, 712 (1977). Therefore, we limit our examination of the admission of this evidence to determine whether it resulted in a miscarriage of justice. *Id.* at 713. "While we have often repeated that, ordinarily, evidence of other crimes or prior misconduct of the defendant may not be received, *Commonwealth* v. *Clifford,* 374 Mass. 293, 298 (1978), and cases cited, such evidence, if not offered to prove bad character or a disposition to commit a crime, may be admitted if relevant for another purpose." *Commonwealth* v. *Sawyer,* 389 Mass. 686, 696 (1983). In the present case, the reference to Reed's alleged attempt to buy marihuana would have been admissible to show that Reed had a reason to identify and call out to the defendant. See *Commonwealth* v. *Haywood,* 377 Mass. 755, 764 (1979). However, the prosecutor abandoned this line of questioning after the objection. In the circumstances, we do not find it likely that the reference to Reed's alleged attempt to buy marihuana from the defendant caused a miscarriage of justice.

3. *Sufficiency of the evidence.* The defendant moved for required findings of not guilty at the close of the Commonwealth's case and renewed this motion after presentation of all the evidence. The judge denied both motions. The defendant argues that this denial was error because the circumstantial evidence taken in a light most favorable to the Commonwealth was insufficient to prove the defendant's guilt beyond a reasonable doubt.

The propriety of the denial of a motion for a required finding of not guilty is determined by "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the de-

fendant was proved beyond a reasonable doubt.'" *Commonwealth* v. *Clary,* 388 Mass. 583, 588 (1983), quoting *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933). Circumstantial evidence is sufficient to establish guilt beyond a reasonable doubt. *Commonwealth* v. *Cinelli,* 389 Mass. 197, 203 n.9 (1983).

The defendant contends that the Commonwealth must prove beyond a reasonable doubt that the accused and no one else committed the offense charged to avoid a required finding of not guilty. However, we have stated that "[i]t is not necessary to prove that no one other than the accused could have done the act. . . . That another might have had the opportunity to do the act goes only to the weight of the evidence." *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 55-56 (1975), quoting *Commonwealth* v. *Lussier,* 364 Mass. 414, 421 (1973). The defendant's argument that identification testimony was inconsistent and, therefore, insufficient also fails. Any inconsistencies in the testimony identifying the defendant as the person running from the store do not require findings of not guilty; such inconsistencies do not render the testimony legally insufficient, but only raise issues of credibility for the jury to decide. *Commonwealth* v. *Clary, supra* at 589.

Nor was this a case where the only evidence of guilt was the defendant's flight from the scene. Morreale saw the defendant coming out of the store and placing his hand inside his running jacket shortly after he heard a bang. After a short interval, Morreale went into the store because he felt something was wrong. There he found the victim lying behind the counter bleeding; the cash drawer was open and depleted. There were indications that the defendant attempted to conceal his whereabouts from the police. "Evidence of consciousness of guilt, while not conclusive, may, with other evidence, be sufficient to prove guilt." *Commonwealth* v. *Swartz,* 343 Mass. 709, 713 (1962). The judge properly denied the defendant's motions for required findings of not guilty. See *Commonwealth* v. *Cinelli, supra* at 203-204.

4. *Jury instructions.* The defendant contends that it was error for the judge to omit the term "presumption of innocence"

from the jury instructions. The Commonwealth argues that the defendant did not specifically object to the absence of this phrase in a manner which would give the judge an opportunity to correct any error. We agree. Defense counsel, in objecting to the charge, appeared concerned with the judge's use of the term "clean slate." At sidebar, defense counsel stated, "I didn't say you didn't say 'presumption of innocence.'" This statement followed the judge's assertion that he thought he had used "presumption of innocence" in the charge.[3]

"It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). The defendant's objection failed to alert the judge to the omission of the particular term. "Therefore, our review of the charge is limited to determining whether there is an error in the charge which creates a

---

[3] The discussion at the bench was recorded as follows:

THE JUDGE: "Are there any suggestions?"

DEFENSE COUNSEL: "Well, if it please the Court, your Honor, I have noted a couple of things here, and one of them is in regard to your instruction as regards the so-called presumption of innocence. If it please the Court, your Honor, I think you covered it by referring to it as starting out with a clean slate. I believe, Your Honor, that is objectionable on the basis that it would indicate that each one starts equally. In fact, the defendant has more than an equal opportunity with the prosecutor. He has a presumption of innocence, and that I believe is beyond a clean-slate concept."

THE JUDGE: "Well, I can tell them that. I thought I did tell them that. I didn't tell them there was a presumption of innocence? I usually do. I don't know why I missed it, but I will be glad to tell them that."

DEFENSE COUNSEL: "Well, I have 'clean slate.'"

THE JUDGE: "Well, I did, but I thought immediately before that I introduced it by saying that there was a presumption of innocence. This means that the defendant starts off with a clean slate. I thought that's what I said."

DEFENSE COUNSEL: "Well, if it please Your Honor, I am not saying that. I am saying that a presumption, without being —"

THE JUDGE: "Well, how long would it take to look it up?"

DEFENSE COUNSEL: "I don't say you didn't say it. I didn't say you didn't say 'presumption of innocence.'"

THE JUDGE: "If I said it —"

DEFENSE COUNSEL: "I said your characterization as a clean slate."

THE JUDGE: "Well, if I said it, I am not going to say it again."

DEFENSE COUNSEL: "All right. Note my objection to that."

substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Reid*, 384 Mass. 247, 258 (1981).

The charge in this case is very similar to the charge reviewed in *Commonwealth* v. *Drayton*, 386 Mass. 39, 46 n.6 (1982). The charge clearly instructed the jury that the indictments were not evidence of the defendant's guilt.[4] "The judge's instructions

[4] The instructions as a whole clearly indicated that an indictment does not imply guilt and amply described the Commonwealth's burden to prove guilt beyond a reasonable doubt: "The fact that this case started out with Grand Jury indictments against this defendant, that's not evidence at all for you to consider. A Grand Jury indictment is simply a procedural mechanism that brings this case here before you as the jury that's going to decide guilt or innocence. A Grand Jury operates completely different, has a different function and purpose than this jury. A Grand Jury simply makes an accusation against a person based upon whatever transpired before the Grand Jury, but it is not evidence for you to consider merely because a Grand Jury has made an indictment.
". . . .

"He has a right under our law to say, and indeed he is saying: 'You must prove your case against me beyond a reasonable doubt. I do not have to say a word.' And that is correct.
". . . .

"The indictments, as I told you before, that came from the Grand Jury are only accusations. When we come to this point in the proceedings, the trial of a case and the guilt or innocence of a defendant in a criminal trial, the Commonwealth must prove these indictments against this defendant by evidence beyond a reasonable doubt. In other words, all of the elements of the crime which I will allude to in a moment or two and the identification of the defendant as the one who committed the crime, those matters must be proved by the Commonwealth by evidence to your satisfaction beyond a reasonable doubt.

"So therefore, although the defendant is accused of a crime, he begins this trial with a clean slate, with no evidence against him, and the jury is permitted to use only legal evidence in support of any charges against this defendant.

"In a criminal case, as I mentioned, the Commonwealth has the burden of proving the defendant guilty of the charges beyond a reasonable doubt. This is a heavier, more difficult burden than as in a civil case, where the proof in a civil case is merely by the fair weight or fair preponderance of the evidence. In a criminal case each of the facts necessary to prove the crime must be proven beyond a reasonable doubt. By proving a fact, we mean making the jury believe it based upon the evidence. But you are not to arrive at a verdict on the quantity of the evidence. It is the quality of the evidence that is important. It's the strength in making you believe the existence of the facts that is important.
". . . .

emphasized the Commonwealth's burden of proof and the jury's responsibility to decide the case on the evidence alone, and thus amply fulfilled the protective purposes of a specific instruction on the presumption of innocence." *Commonwealth v. Drayton, supra* at 47. In these circumstances, we find no error in the jury instructions.

5. *Relief under G. L. c. 278, § 33E.* The defendant requests that we exercise our power under G. L. c. 278, § 33E, to grant him a new trial. We have reviewed the whole case on the law and the facts to ensure that there was no miscarriage of justice. See *Commonwealth* v. *Toney*, 385 Mass. 575, 588 (1982). We conclude that the defendant is not entitled to relief under G. L. c. 278, § 33E.

*Judgments affirmed.*

---

"I again emphasize the burden of proof is on the prosecutor and extends to every element of the crime, and it extends to the identity of the defendant as the perpetrator of the crime, to prove that to you by evidence to your satisfaction beyond a reasonable doubt. If after examining the testimony you have reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."