NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11962

COMMONWEALTH  vs.  CARLOS G. STEVENSON.

Dukes.     February 11, 2016. - May 25, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Lenk, & Hines,
JJ.

Practice, Criminal, Indictment, Dismissal, Grand jury
    proceedings.  Grand Jury.  Evidence, Grand jury
    proceedings.

Indictments found and returned in the Superior Court
Department on October 6, 2014.

A motion to dismiss the indictments was heard by Cornelius
J. Moriarty, II, J.

The Supreme Judicial Court granted an application for
direct appellate review.

Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.
Janice Bassil (John E. Oh with her) for the defendant.
The following submitted briefs for amici curiae:
Wendy J. Murphy for Women's and Children's Advocacy Project
at New England Law|Boston.
Kevin J. Curtin, Assistant District Attorney, for District
Attorneys for the Berkshire, Bristol, Eastern, Middle, Norfolk,
Northern, Northwestern, Plymouth, Suffolk, and Western
Districts.

John J. Barter & Chauncey B. Wood for Committee for Public Counsel Services & another.

CORDY, J.  On October 6, 2014, a grand jury returned six indictments against the defendant, Carlos Stevenson:  one charging aggravated rape of a child with force, G. L. c. 265, § 22B; and five charging indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B.[1]  The defendant filed a motion to dismiss the indictments, arguing, as is relevant to this appeal, that the evidence presented to the grand jury was insufficient because the Commonwealth offered only hearsay testimony from a single witness, the investigating officer.

After a hearing, a judge of the Superior Court allowed the defendant's motion to dismiss without prejudice.  The judge concluded that, while an indictment generally may be based solely on hearsay, the Commonwealth's exclusive reliance on such testimony in the present case constituted "extraordinary circumstances" that justified dismissal of the indictments.  In particular, the judge determined that "there was no good reason for [the complainant] not to testify," and the prosecutor's

---

[1] Various portions of the case were either impounded or under seal.  The seal and impoundment are lifted as to the information in the opinion, to the extent necessary in resolving the case.  See Adams v. Adams, 459 Mass. 361, 362 n.1 (2011), S.C., 466 Mass. 1015 (2013).

decision not to seek her testimony deprived the defendant of the opportunity to obtain pretrial discovery.[2]

The Commonwealth appealed the dismissal, and we granted the defendant's application for direct appellate review. We conclude that this case does not present an extraordinary circumstance warranting a variance from our general approval of indictments that are returned on the basis of hearsay testimony. Therefore, the order of the Superior Court is reversed.[3]

1. Evidence presented at the grand jury proceedings. The testimony presented before the grand jury came exclusively through one witness: the lead investigating officer on the case, Detective Mark Santon of the Tisbury police department. That evidence included the following.

On May 22, 2014, a lieutenant with the West Tisbury police department contacted Santon. The lieutenant informed Santon that the complainant's boy friend reported to the West Tisbury police that the complainant had, years before, been a victim of sexual assault. Santon interviewed the complainant on multiple

_____

[2] The complainant has been referred to by various pseudonyms; we identify her only as the complainant.

[3] We acknowledge the amicus briefs submitted by the Women's and Children's Advocacy Project at New England Law|Boston; the District Attorneys for the Berkshire, Bristol, Eastern, Middle, Norfolk, Northern, Northwestern, Plymouth, Suffolk, and Western Districts; and the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

occasions and relayed the contents of those interviews to the grand jury.

The complainant described to Santon a series of sexual assaults at the hands of the defendant, beginning in 2000, when she began babysitting the defendant's children, and continuing until the fall of 2003. These included an assault by the defendant occurring when she was catsitting at another neighbor's home. The alleged episodes ranged from inappropriate comments to groping to forcible digital rape.

The complainant's boy friend was not the first person she had told about the attacks. During her senior year in high school, a friend of the complainant's was conducting a class project on sexual assault. The complainant filled out a survey describing her contacts with the defendant, which the classmate compiled as part of a PowerPoint presentation. Officer Santon interviewed the friend, and obtained from her the survey that had been filled out by the complainant. The portion of the presentation applicable to the complainant was introduced as an exhibit before the grand jury.

Santon further testified about his interview with the complainant's parents and the neighbor for whom the complainant was catsitting when one of the assaults was alleged to have occurred. After Santon testified and the grand jury had an opportunity to ask him questions regarding whether he had been

able to further confirm the complainant's allegations, the grand jury returned six indictments, which the defendant moved to dismiss. The judge allowed the motion without prejudice, ruling that, "in a case such as this, the exclusive use of hearsay in the presentation of the case to the grand jury destroys the historical function of the grand jury in assessing the likelihood of prosecutorial success and diminishes the protections that the grand jury is supposed to afford to the innocent."

2. <u>Discussion</u>. The defendant asserts two arguments in support of the proposition that the judge properly dismissed the indictments. First, he argues that indictments supported by hearsay evidence never meet the due process standards of art. 12 of the Massachusetts Declaration of Rights, and such evidence should therefore not be admissible before the grand jury. In the alternative, the defendant asserts that the use of hearsay testimony under the circumstances presented in this case impaired the function of the grand jury to a degree that warranted the dismissal of the indictments. We address the two arguments in turn.

a. <u>The presentation of hearsay testimony to the grand jury, exclusively or otherwise, is supported by our case law</u>. Grand juries in the Commonwealth act as "an informing and accusing body," (citation omitted). <u>Lataille</u> v. <u>District Court</u>

of E. Hampden, 366 Mass. 525, 532 (1974). They perform the "dual function of determining whether there is probable cause to believe a crime has been committed and of protecting citizens against unfounded criminal prosecutions." Id.

The right to a grand jury indictment for State crimes is not guaranteed by the United States Constitution. See Commonwealth v. McCravy, 430 Mass. 758, 761 n.5 (2000). It is, however, "one of the great securities of private right, handed down to us as among the liberties and privileges which our ancestors enjoyed at the time of their emigration, and claimed to hold and retain as their birthright." Jones v. Robbins, 8 Gray 329, 342 (1857). Consequently, in the Commonwealth, it is, with respect to "crimes of great magnitude," a right that is firmly rooted in and protected by art. 12 of the Massachusetts Declaration of Rights. Id. at 347.

While jealously guarding the grand jury's role as an independent investigative body, our courts have exercised a somewhat greater supervisory role over the substance of their proceedings than Federal courts have over those of Federal grand juries. Compare United States v. Williams, 504 U.S. 36, 50 (1992) ("any power [F]ederal courts may have to fashion, on their own initiative, rules of grand jury procedures is a very limited one"; to permit challenge to facially valid indictment on grounds that there was inadequate or incompetent evidence

before grand jury would run counter to history of institution), with Commonwealth v. Walczak, 463 Mass. 808, 810 (2012) (requiring prosecutor to instruct grand jury on elements of murder and on significance of mitigating circumstances and defenses [other than lack of criminal responsibility] where Commonwealth seeks to indict juvenile for murder and where there is substantial evidence of mitigating circumstances or defenses), Commonwealth v. Mayfield, 398 Mass. 615, 634 (1986) (integrity of grand jury proceeding would be impaired if defendant is "put to trial on an indictment which the Commonwealth knows is based in whole or in part on false testimony"), Commonwealth v. O'Dell, 392 Mass. 445, 446-447 (1984) (dismissing indictment where grand jury impaired when presented with portion of statement attributed to defendant, seemingly inculpating him, without exculpatory portion of purported statement that had been excised), and Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982) (announcing rule that "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him").[4]

---

[4] The Commonwealth's statutes and common law are likewise protective of defendants and witnesses during grand jury proceedings. See Commonwealth v. Woods, 466 Mass. 707, 709, cert. denied, 134 S. Ct. 2855 (2014) ("targets, or those reasonably likely to become targets, of the investigation" are entitled to warnings that they can exercise their privilege

Those protections, however, are limited by the grand jury's independence, and generally we "will not inquire into the competency or sufficiency of the evidence before the grand jury" (citation omitted).  Commonwealth v. Robinson, 373 Mass. 591, 592 (1977).  See McCarthy, supra at 161-162.  Therefore, the heavy burden to show impairment of the grand jury proceeding is borne by the defendant.  See Commonwealth v. LaVelle, 414 Mass. 146, 150 (1993).

We have consistently and without notable exception held that "an indictment may be based solely on hearsay."  O'Dell, 392 Mass. at 450-451 (in McCarthy, "we did not depart from the rule that an indictment may be based solely on hearsay").  See Commonwealth v. McGahee, 393 Mass. 743, 746 (1985), quoting Commonwealth v. St. Pierre, 377 Mass. 650, 655 (1979) ("indictment may stand which is based in part or altogether on hearsay"); LaVelle, supra at 149, quoting St. Pierre, supra ("it is not enough to justify dismissal of an indictment that the jurors received hearsay or hearsay exclusively, and this is so

---

against self-incrimination under Fifth Amendment to United States Constitution); G. L. c. 277, § 14A ("Any person shall have the right to consult with counsel and to have counsel present at . . . examination before the grand jury; provided, however, that such counsel . . . shall make no objections or arguments or otherwise address the grand jury or the district attorney").  In contrast, counsel for an unindicted witness is not permitted to be present in the room when the witness is testifying before a Federal grand jury.  See United States v. Mandujano, 425 U.S. 564, 581 (1976)

even when better testimony was available for presentation to the grand jury"); Mass. R. Crim. P. 4 (c), 378 Mass. 849 (1978) ("An indictment shall not be dismissed on the grounds that the evidence presented before the grand jury consisted in whole or in part of the record from the defendant's probable cause hearing or that other hearsay evidence was presented before the grand jury"). The defendant acknowledges that no appellate court in the Commonwealth has affirmed the dismissal of an indictment solely because it was based on hearsay, and we do not perceive a need to alter our long-standing general rule.[5]

---

[5] Our affirmation of the policy that allows for indictments before the grand jury to rely solely on hearsay evidence dates back more than a century, see, e.g., Commonwealth v. Woodward, 157 Mass. 516, 518 (1893), and is supported by recent case law, see Commonwealth v. Walczak, 463 Mass. 808, 845 (2012) (Spina, J., concurring in part and dissenting in part); Commonwealth v. Washington W., 462 Mass. 204, 210 (2012); Commonwealth v. McGahee, 393 Mass. 743, 746 (1985); Commonwealth v. St. Pierre, 377 Mass. 650, 655 (1979), as well as commentary about the generally accepted standards of review for such proceedings. See 1 Wigmore, Evidence, § 4, at 53-54 (Tillers rev. ed. 1983) ("Proceedings before a grand jury are both ex parte and interlocutory; moreover, the grand jury only seeks for a 'probable cause.' Hence, on all principles, the jury trial rules of evidence should not apply" [footnote omitted]); 4 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 15.5(c), at 652 (4th ed. 2015). Federal grand jury proceedings likewise allow the use of hearsay evidence. See United States v. Williams, 504 U.S. 36, 50, 54 n.8 (1992); Costello v. United States, 350 U.S. 359, 363-364 (1956). Indeed, we remain unaware of any jurisdiction in which the common law prohibits hearsay evidence before the grand jury absent a statute or rule of criminal procedure. See Commonwealth v. O'Dell, 392 Mass. 445, 452 n.2 (1984). A handful of States prohibit hearsay at the grand jury stage by statute or court rule. See, e.g., Alaska R. Crim. P. 6(r); Cal.

We proceed, then, to consider whether the specific facts of this case present an exception to that general rule.

b. The exclusive use of hearsay before the grand jury may be a ground for the dismissal of an indictment, but only under extraordinary circumstances. Despite our general approval of indictments based on hearsay, we have on occasion repeated the admonition that "sound policy dictates a preference for the use of direct testimony before grand juries." St. Pierre, 377 Mass. at 655-656. See McCarthy, 385 Mass. at 162 n.4. See also Commonwealth v. Bishop, 416 Mass. 169, 174 (1993); LaVelle, 414 Mass. at 149; O'Dell, 392 Mass. at 451 n.1. Consistent with that proposition, we have stated that, under "extraordinary circumstances," the prosecution's reliance on hearsay might impair "the integrity of [the] grand jury proceedings" to a degree that warrants dismissal. McGahee, 393 Mass. at 747. See St. Pierre, supra. The defendant urges us to affirm the motion judge's conclusion that this case presented such circumstances.

The motion judge did not find that the evidence considered by the grand jury was insufficient to satisfy the probable cause standard, or that the grand jury were presented with false

---

Penal Code § 939.6(b) (1959); La. Code Crim. Proc. Ann. (1928) art. 442; Minn. R. Crim. P. § 18.05, subd. 1 (West 2010); Nev. Rev. Stat. § 172.135(2) (1967); N.M. Stat. Ann. § 31-6-11(A) (1969); N.Y. Crim. Proc. Law §§ 190.30(1) (McKinney's 1970); Ore. Rev. Stat. § 132.320(1) (1973); S.D. Codified Laws Ann. § 23A-5-15 (1939). The Legislature has not enacted a cognate statute in the Commonwealth.

evidence or evidence so misleading and distorted as to impair the grand jury proceedings. Rather, he concluded that the use of hearsay was pernicious for three reasons, all of which stem from the fact that the complainant did not testify. First, Santon, an experienced witness, was able consistently and smoothly to articulate the facts to the grand jury, belying any potential contradictions or misstatements in the complainant's story. Second, the grand jury were unable to observe the complainant's demeanor and appearance, and could not assess her credibility. Finally, the presentment of the case through one witness denied the defendant his opportunity to obtain pretrial discovery, which the judge concluded was a tactic by the Commonwealth to avoid the possibility that grand jury testimony could be used to impeach the complainant at trial. The judge credited one further factor that informed his decision, suggesting that a higher standard of evidence ought to be required when charges of sexual assault are at issue because of the serious damage to one's reputation caused by such an indictment.

There is, however, nothing that differentiates the facts and circumstances presented here from those in McCarthy, 385 Mass. at 162 n.4 (indictment based on hearsay testimony from investigating officer in sexual assault case permissible where complainant was available to testify at grand jury), and St.

Pierre, 377 Mass. at 655-657 (indictment based on double hearsay testimony permissible), except that the indictments in this case were brought fourteen years after the purported crimes began. Our inquiry is, then, whether it is an "extraordinary circumstance" when sexual assault charges are brought many years after the alleged underlying crime was committed, such that hearsay testimony is an unacceptable substitute for direct testimony. We conclude that it is not.

There are characteristics inherent in the presentation of sexual assault charges before a grand jury that may require greater attention in certain circumstances. For instance, sexual assault cases often involve a credibility contest between the complainant and the defendant. And, with the passage of time and the absence of other witnesses, corroborating evidence, or admissions of guilt, the importance and details of the complainant's story are heightened. Accurately relaying the complainant's memory of those details to the grand jury through hearsay testimony can be less than perfect. These considerations, to some degree, came to fruition in the present case. At various times during the grand jury proceedings, Santon indicated that he and the complainant had trouble identifying the particular dates on which certain events had occurred, and the defendant points out various portions of

Santon's testimony that do not match squarely with his police report of the complainant's interviews.[6]

This problem may become more salient now that the Legislature has eliminated the statute of limitations as to indictments and criminal complaints charging violations of the statutes at issue here. See G. L. c. 277, § 63, as amended through St. 2006, c. 303, § 9, and St. 2010, c. 267, § 68. The fact that sexual assault cases under these statutes are now capable of being prosecuted decades after the commission of the crimes may exacerbate concerns regarding the reliability of hearsay evidence presented in a nonadversary setting such as the grand jury. But the Legislature contemplated the inevitability of such cases being brought under G. L. c. 277, § 63, and provided for additional protections when such charges are sought. Specifically, the statute explicitly provides that "indictments . . . filed more than [twenty-seven] years after the date of commission of such offense shall be supported by independent evidence that corroborates the victim's allegation"

---

[6] The defendant does not assert, nor did the judge below find, that the prosecutor intentionally sought to introduce false testimony. As we have indicated before, "inaccurate statements made in good faith do not require dismissal of an indictment." Commonwealth v. Mayfield, 398 Mass. 615, 620 (1986). The inconsistencies in Santon's testimony identified by the defendant do not warrant dismissal, as "dismissal of an indictment as a prophylactic measure to discourage intentional wrongdoing [has] no application." Id.

(emphasis added).  Id.  Such corroboration was not required here.

This case does not present any circumstances that would qualify it as extraordinary so as to impair "the integrity of the grand jury proceedings" to a degree that warrants dismissal of the defendant's indictments.  McGahee, 393 Mass. at 747. Santon testified in great detail about what the complainant had told him.  He was able to respond substantively to questions posed by the grand jurors,[7] and he informed the grand jury about the other potential prosecution witnesses he had interviewed and the information they had provided him.[8]

Further, there is no evidence that the prosecution acted to subvert the defendant's right to discovery in the present case, or in effect did subvert any discovery.  The defendant was

---

[7] One juror asked:  "So, just to be clear, this is the entire body of evidence?"  Another queried whether Detective Mark Santon "had experience interviewing victims who [had] waited periods of time . . . before reporting."  This juror followed up by asking whether Santon believed that the complainant's recollection sounded like those of other victims. Another asked why there was never a police inquiry regarding the survey conducted in 2009, and why the police never interviewed the defendant's children or wife.  Finally, a grand juror asked, "[I]s there any other corroborating evidence that we should be aware of that these incidents happened?"

[8] We do not agree that the defendant's indictments based on hearsay raise concerns because of the stigma associated with being charged with sexual assault violations.  We have never held that the level of stigma that may attach to the nature of the crime charged changes either the standard of proof or the evidentiary requirements applicable to a grand jury proceeding, and decline to do so in this case.

provided with a detailed report of what the complainant told Santon, and of Santon's follow-up interviews with potential witnesses. The defendant has no right to require the Commonwealth to call witnesses to testify before the grand jury so that he might have transcripts of their testimony to use at trial, and the Commonwealth has no obligation to call such witnesses.

The grand jury in the present case heard all the information available to the police at the time of the grand jury proceedings, and were able to render an informed decision as to the indictments. If members of the grand jury had been uncertain about returning indictments based on the hearsay testimony regarding a case that was fourteen years old, they could have requested the presentation of further evidence. See Commonwealth v. McNary, 246 Mass. 46, 51 (1923) ("[I]f, in the course of such investigation, it appears that there are other witnesses than those produced for the prosecution, and the grand jury are actually convinced that their testimony may be material and pertinent, and of such a nature as would elucidate or explain the evidence for the government, and lead them to a more perfect knowledge of the merits of the case, it is said they may require the testimony of such witnesses"). See also Commonwealth v. Williams, 439 Mass. 678, 683 (2003) (grand jury possess "broad powers to 'inquire into all information that

might possibly bear on [their] investigation'" [citation omitted]).[9]

3.  Conclusion.  For the foregoing reasons, the order dismissing the defendant's indictments is reversed, and the case is remanded to the Superior Court, where the indictments are to be reinstated.

So ordered.

---

[9] The defendant argues that the grand jury may never have been instructed as to their ability to call additional witnesses.  The record does not reflect what the grand jurors were instructed.  The record does reflect, however, that the grand jurors asked extensive questions of Santon, and understood the limited nature of the evidence they were receiving.

It would be helpful if the Superior Court would craft a model instruction for use by judges who are empanelling grand jurors.  Among other things, the instruction could inform them that they may request the production of additional witnesses if they find it necessary to their full consideration of a case presented to them by the prosecutor, in accord with Commonwealth v. McNary, 246 Mass. 46, 51 (1923).