NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-525

COMMONWEALTH

vs.

THOMAS PATRICK BLEAKNEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On May 5, 2023, a Plymouth County grand jury indicted the defendant for two counts of rape of a child with force, G. L. c. 265, § 22A, and one count of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B.  A Superior Court judge subsequently dismissed the indictments with prejudice, finding that the Commonwealth presented distorted evidence to the grand jury that impaired the integrity of the proceedings. The Commonwealth appealed the dismissals pursuant to Mass. R. Crim. P. 15 (a) (1), as amended, 476 Mass. 1501 (2017).  We conclude that the Commonwealth's repeat presentation of police commentary on the defendant's affect after dismissal of a prior indictment rose to the level of recklessness and likely impaired

the integrity of the grand jury proceedings.  That error in combination with other errors requires us to affirm the dismissal with prejudice of the indictments.

Background.  We recite the relevant facts as found by the motion judges, supplemented by undisputed evidence in the record.

1.  First grand jury proceedings.  On August 6, 2020, the victim, then nineteen years old, reported to Scituate police that the defendant had sexually abused her on several occasions when she attended his daycare as a toddler.  Several months later, Lieutenant Amanda O'Shea and Detective Michael Prouty interviewed the defendant.  On August 13, 2021, the Commonwealth convened a grand jury charged with indicting the defendant with one count of rape of a child with force, G. L. c. 265, § 22A.  At the proceedings, O'Shea testified that during an interview with the defendant, his affect was "weird" and that she had "never had an interview like that, ever" in her twenty years of experience.  She additionally testified that the victim's story "just made sense."  Ultimately, the prosecutor never played a recording of the interview between O'Shea and the defendant during the presentation of the evidence, but did provide to the jury members a laptop and a flash drive containing the video recording of the interview.  At the close of the evidence, the

grand jury indicted the defendant on one count of rape of a child by force.

The defendant subsequently filed a motion to dismiss the indictment, in which he asserted that the Commonwealth impaired the grand jury proceedings by presenting distorted evidence through O'Shea's inaccurate description of the defendant and impermissible vouching for the victim. A Superior Court judge (first motion judge), after viewing the video recording of the defendant's interview, found that the defendant "was calm and responsive" throughout the course of the interview. The first motion judge concluded the detective "blatantly mischaracterized the Defendant's statements and demeanor and misled the grand jury," and allowed the motion to dismiss without prejudice on March 31, 2023.

2. Renewed grand jury proceedings. On May 5, 2023, the Commonwealth convened a new grand jury, choosing to not have O'Shea testify and instead offering testimony from both the victim and Prouty. Immediately prior to the start of her testimony, the victim approached Prouty and recounted previously undisclosed information regarding urinary tract infections (UTIs) she had as a child. The victim then testified to the grand jury that her mother told her that she frequently developed UTIs as a toddler and that these UTIs stopped "at the

3

exact same time" that she stopped attending the defendant's daycare.

When Prouty testified, he described the defendant as having a "flat" demeanor during police questioning. Again, a video recording of the interview was made available to the grand jury through a flash drive, but it is unknown whether it was viewed. The grand jury ultimately indicted the defendant on two counts of rape of a child by force and one count of indecent assault and battery on a child under the age of fourteen.

Following the indictments, the Commonwealth disclosed to the defense that the mother realized that she was mistaken, and the victim's UTIs occurred several years after the time of the alleged incidents. Moreover, the mother recounted an earlier conversation with the victim where the victim raised the prospect that the victim's Uncle Johnny could have committed the abuse. The mother denied that her brother could have had access to the victim to abuse her. In a subsequent conversation between the victim and her mother, the mother, believing that the defendant looked like her brother, asked if it could have been the defendant. The victim reacted strongly to the suggestion. With this new information, the defendant filed a motion to dismiss based on the 2023 grand jury presentation. A second motion judge allowed the defendant's motion to dismiss

4

with prejudice.  The Commonwealth timely appealed the second motion judge's dismissal.

Discussion.  In cases involving the integrity of the grand jury, the defendant bears the "heavy burden to show impairment of the grand jury."  Commonwealth v. Stevenson, 474 Mass. 372, 376 (2016).  The defendant must prove that "(1) the Commonwealth knowingly or recklessly presented false or deceptive evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indictment; and (3) the evidence probably influenced the grand jury's decision to indict."  Commonwealth v. Silva, 455 Mass. 503, 509 (2009), citing Commonwealth v. Mayfield, 398 Mass. 615, 620-622 (1986).  When reviewing the decision of a motion judge after a hearing on a motion to dismiss based on false or misleading evidence, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'"  Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).  This case revolves around three specific pieces of evidence that the second motion judge took into account when allowing the defendant's motion to dismiss.  We address each in turn.

5

1. Prouty's testimony. The Commonwealth first argues that it was error for the second motion judge to conclude that Prouty's description of the defendant's demeanor during his interview with O'Shea impaired the grand jury proceedings because the depiction was accurate and the jury had access to a video recording of the interview. We disagree.

Whenever an "unfair and misleading presentation" of statements "attributed to the defendant" occurs, grand jury proceedings are considered impaired. Commonwealth v. O'Dell, 392 Mass. 445, 447 (1984). Here, when Prouty described the defendant's demeanor as "flat," this description must be viewed within the larger context of this case's history with grand jury proceedings. The first grand jury proceedings for this case were dismissed because of, as the first motion judge described it, the "blatant mischaracteriz[ation]" by O'Shea of the defendant's interview and the prosecution's decision to not play the interview for the grand jury but instead provide a flash drive that the grand jury could use to view the interview if it so chose.[1]

---

[1] Additionally, the first motion judge, in his discussion of whether to dismiss the first indictments with or without prejudice, referenced another criminal case investigated by the Scituate police which was dismissed after a third Superior Court judge concluded "the Commonwealth's false and misleading presentation regarding the extraction was an impermissible

6

When the proceedings were renewed, the Commonwealth had a chance to correct any wrongs in their presentment of evidence to the previous grand jury.  Instead, the Commonwealth introduced the same exact error as the first proceedings by soliciting Prouty's characterization of the interview, which resulted in him describing the defendant as "flat."[2]  The characterization of flat in this context is not synonymous with calm, as the Commonwealth argues.  See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/flat ("flat" means "lacking in animation, zest, or vigor").  In this context, where the defendant was accused of raping a toddler, "flat" can take on the implication of absence of an appropriate emotional response to describe the defendant's reaction to serious allegations, supplying a sense of abnormality attributed to the defendant's demeanor.

Additionally, after Prouty's testimony, the prosecutor again left a flash drive with the interview recording for the

---

attempt to 'hide the ball' that significantly impaired the integrity of the grand jury proceedings."

[2] When discussing the defendant's initial demeanor during the interview, Prouty stated he was "very matter of fact, and gave clear answers to all of our questions.  Flat demeanor but just typical conversation."  When the Commonwealth then followed up and asked about the defendant's response to the allegations presented to him, Prouty responded "in my opinion, he remained fairly flat."

grand jury to view, but did not make any effort to have the jury actually watch the interview and compare it to Prouty's characterization.  The Commonwealth argues that there is no requirement to publish an exhibit to a grand jury, but in this context, by again characterizing the defendant's demeanor and not playing the interview to the grand jury, the prosecutor's presentation gave the impression of attempting to "hide the ball and expect the grand jury to find it."  Commonwealth v. Hunt, 84 Mass. App. Ct. 643, 655 (2013).  Overall, on this record, we conclude this conduct rose to the level of recklessness and likely impaired the integrity of the grand jury proceedings.  O'Dell, 392 Mass. at 446-447.

2.  Uncle Johnny evidence.  The Commonwealth also argues that its failure to present evidence that the victim had asked her mother if Uncle Johnny had committed the offense was not intentional or done with reckless disregard for the truth because neither the prosecutor nor Prouty were aware of this evidence until months after the grand jury proceeding.  Where, as in this case, the grand jury was left with a distorted version of the identification process, we conclude otherwise.

Generally, "the mere withholding of exculpatory evidence [from a grand jury] is not a proper ground for the dismissal of an indictment."  Commonwealth v. Rakes, 478 Mass. 22, 30 (2017),

8

quoting Commonwealth v. Pina, 406 Mass. 540, 549, cert. denied, 498 U.S. 832 (1990).  However, exceptions to this rule are if the exculpatory evidence "was withheld in a manner that distorts the meaning of the evidence" presented, or if the exculpatory evidence "was so powerful" that it undermines the credibility of a key witness or would have led the grand jury not to indict. Rakes, supra.  Moreover, when a prosecutor possesses evidence that would "greatly undermine the credibility of evidence likely to affect the grand jury's decision to indict, the prosecutor must alert the grand jury to the existence of such evidence." Commonwealth v. McGahee, 393 Mass. 743, 746 (1985).

We discern no error in the second motion judge's conclusion that omitting the mention of a possible third-party suspect identification in Uncle Johnny "greatly undermined the grand jury's decision to issue indictments."  This is because the police knew about the Uncle Johnny evidence prior to the grand jury proceedings, and, as a member of the prosecution team, that knowledge reflected the knowledge of the entire team.  See Commonwealth v. Beal, 429 Mass. 530, 531-532 (1999) ("Persons considered subject to the prosecutor's control, and, therefore, subject to the prosecutor's duty of disclosure, are those individuals acting, in some capacity, as agents of the government in the investigation and prosecution of the case"

9

[quotation omitted]).  Therefore, when the prosecution presented the evidence surrounding the victim's identification of the defendant and left out evidence related to Uncle Johnny, this omission represented more than mere negligence.  The victim first brought up the possibility of Uncle Johnny being the perpetrator to her mother, who is also Uncle Johnny's sister.  When the mother dispelled the possibility that her brother could be the perpetrator, she then three weeks later offered for the first time the defendant's name, leading to a strong reaction from the victim and the ensuing investigation.  On this record, omitting the sequence of events that resulted in the identification of the defendant as the perpetrator represents reckless behavior that impaired the grand jury proceedings.  See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982) ("at the very least the grand jury must hear sufficient evidence to establish the identity of the accused").

3.  UTI evidence.  Finally, the Commonwealth asserts that while it may have acted negligently in failing to investigate the victim's UTI recollection, it did not act recklessly in eliciting this information from the victim during her grand jury testimony.  We disagree.

Ordinarily, a grand jury may rely on hearsay when making a probable cause determination.  See Commonwealth v. Washington

10

W., 462 Mass. 204, 210 (2012). Moreover, the presentment of inaccurate testimony made in good faith does not necessitate an indictment's dismissal. See Commonwealth v. Reddington, 395 Mass. 315, 320 (1985). However, in this case, the UTI evidence was not represented to the grand jury in a way that suggests a mere repetition of information given in good faith. Initially the prosecutor asked the victim if she "recall[ed] now in retrospect, or have you heard, that you have been having any difficulty with your private area during the time you were [at the daycare]?" In response, the victim said, "[y]eah. So I would get UTIs often as a child. Very frequently to the point my mom would bring me to the doctor and be very confused why I was having so many UTIs basically as a toddler or a baby. And then the UTIs stopped the exact same time that I stopped going to the daycare." The prosecutor then asked if that was the victim's memory "or is that from talking to your mom," to which the victim responded "[t]hat's my mom."

As the second motion judge noted in her thoughtful order allowing the defendant's motion to dismiss with prejudice, the UTI information was one of the "sole specific allegations" beyond the victim's "personal recitation of events" and represented a "bombshell" that necessitated an investigation. However, the prosecution instead presented this evidence to the

11

grand jury as hearsay without further investigation at that time.  In cases such as these, where repressed and then recovered memories provide the bulk of the evidence, it is clear that any contemporaneous information that would support those recovered memories would bear significant weight.  Yet, the prosecution did not speak to the mother who provided the information, even though there is no indication that she was not available, or attempt to contact the victim's pediatrician to obtain medical records.  Given the importance of this evidence and the strong likelihood that it "made a difference" in the grand jury's decision to indict, the Commonwealth's conduct rises to recklessness and likely impaired the grand jury proceedings.  Mayfield, 398 Mass. at 622.

Order dismissing indictments with prejudice affirmed.

By the Court (Henry, Smyth & Toone, JJ.[3]),

Clerk

Entered:  August 29, 2025.

---

[3] The panelists are listed in order of seniority.