LOWY, J. (concurring).
**17 Although I join Justice Cypher's concurrence, I write separately for three reasons. First, in my view prosecutors should instruct a grand jury on affirmative defenses and on mitigation whenever the evidence supports such instructions. It is good practice to do so, and a number of district attorneys' offices follow this approach. I would not require such instructions, however, for the compelling reasons outlined in Justice Cypher's opinion.
Second, I believe that Justice Budd's conclusion is unwieldy at best, and perhaps even unworkable. I agree with the dissent that the grand jury in this case "heard substantial evidence ... that the defendant acted in lawful self-defense." Post at ----, 130 N.E.3d 696. How then does a judge rule on what Justice Cypher is calling a "Fernandes motion," post at ----, 130 N.E.3d 696, where exculpatory evidence, if believed, would result in a no bill? Does the Commonwealth have to delay its grand jury presentation until the Commonwealth retains an expert on battered woman syndrome? What if the exculpatory evidence is a defendant's statement to police made during custodial interrogation? What if that statement cannot be reconciled with forensic and medical evidence? What if, in a rape case, there is overwhelming evidence that the alleged victim was too impaired to consent and the defendant's own statement, inconsistent with a video recording of the incident, is that he was too impaired to recognize the victim's impairment? See Commonwealth v. Blache, 450 Mass. 583, 597, 880 N.E.2d 736 (2008) ("Commonwealth must prove that the defendant knew or reasonably should have known that the complainant's condition rendered her incapable of consenting"). Must a grand jury be instructed on Blache at the risk of a "Fernandes dismissal"? What if the defense is entrapment, accident, or selective prosecution? Does the result in these circumstances depend on a motion judge's determinations of credibility? That seems akin to adjudication.
Third, once this court intrudes on grand jury practice, absent insufficient evidence or impairment of the grand jury, we alter the function of the grand jury and detract from its historic role. The grand jury are not an adjudicatory body. The more the grand jury's vote becomes an adjudication, the less the grand jury act as an investigatory body and a shield.
CYPHER, J. (concurring in part and dissenting in part, with whom Lowy, J., joins).
**18 I agree with the court that the evidence presented to the grand jury supports the indictment for murder and that the lack of instruction on mitigating circumstances did not impair the integrity of the grand jury.
*712 I would, however, stop there and not establish another mechanism to dismiss an indictment. I do not agree with the dissent, which would hold that in all cases where the Commonwealth seeks an indictment for murder and there is substantial evidence of mitigating circumstances or defenses (except lack of criminal responsibility) the grand jury must be instructed on the effect of mitigating circumstances and defenses.[1] In my opinion, the usual instructions on the elements of a crime are all that need to be given.[2]
I write separately because I do not think that it is proper or necessary for the court to intrude further into grand jury practice. I am of the view that although it may be best practice to instruct grand juries on the elements of lesser offenses and defenses, a new rule would result in delay, add nothing to the assurances of a fair trial, and be an encroachment on the traditional grand jury practice and function.
As the United States Supreme Court observed when discussing whether to adopt a change to grand jury practice to determine whether indictments were supported by competent evidence,
"[n]o persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observation of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial."
Costello v. United States, 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956). See Commonwealth v. Gibson, 368 Mass. 518, 524, 333 N.E.2d 400 (1975), S.C., 377 Mass. 539, 387 N.E.2d 123 (1979), and 424 Mass. 242, 675 N.E.2d 776, cert. denied, 521 U.S. 1123, 117 S.Ct. 2518, 138 L.Ed.2d 1020 (1997), quoting Costello, supra.
It has been long-settled law that the Commonwealth is not required **19 to present evidence of so-called defenses or otherwise disprove such matters before the grand jury, Commonwealth v. Silva, 455 Mass. 503, 511, 918 N.E.2d 65 (2009) ; inform a grand jury of the differences between murder and manslaughter or the relevance of intoxication, Commonwealth v. Bousquet, 407 Mass. 854, 860, 556 N.E.2d 37 (1990) ; or inform grand jury as to a lesser included offense of the crime for which it seeks indictment, unless requested, Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999). See generally Commonwealth v. Walczak, 463 Mass. 808, 847, 979 N.E.2d 732 (2012) (Spina, J., concurring in part and dissenting in part).
The grand jury committee referenced in Justice Budd's opinion consisted of prosecutors and defense attorneys who worked diligently to review the grand jury practices of the various district attorneys and the Attorney General. Ante at note 1. The committee developed six proposed "best practices" for prosecutors when making grand jury presentments. See Supreme Judicial Court Committee on Grand Jury Proceedings: Final Report to the Justices, at 11-14 (June 2018). One of the best practices *713 the committee proposed is no. 5(B), advising prosecutors to "consider instructing the grand jury [where the defendant is not a juvenile] on the elements of lesser offenses and/or defenses, where such instructions would be in the interest of justice or would assist the grand jurors to understand the legal significance of mitigating circumstances and defenses." Id. at 13. Best practices are, however, just that. After hundreds of years of grand jury practice, there is nothing in the record or in the report of the committee that indicates that there is a problem in the Commonwealth with instructions to the grand jury. See Walczak, supra at 844-856, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part).
To better understand my position, it is helpful to review briefly some of the fundamental principles that have guided grand jury practice in Massachusetts. In his concurring opinion in Commonwealth v. Grassie, 476 Mass. 202, 65 N.E.3d 1199 (2017), Justice Lowy wrote: "For the past 236 years the grand jury [have] been an investigatory and accusatory body in this Commonwealth." Id. at 221, 65 N.E.3d 1199 (Lowy, J., concurring), citing Commonwealth v. Moran, 453 Mass. 880, 884 n.7, 906 N.E.2d 343 (2009). Justice Lowy correctly anticipated that the "convening of the study group [would] be but a first step in the erosion of that vital and historic function." Grassie, supra (Lowy, J., concurring).
The institution of the grand jury is one of the oldest in our criminal justice system, dating back to the rule of King Henry II
**20 in 1164. Simmons, Re-Examining the Grand Jury: Is There Room for Democracy in the Criminal Justice System?, 82 B.U. L. Rev. 1, 4 (2002). Years later, the concept of the grand jury was imported to the American colonies along with the rest of the common law. Id. at 10. The Massachusetts grand jury practice was established by art. 12 of the Massachusetts Declaration of Rights and occupies a unique place in our jurisprudence. See Jones v. Robbins, 8 Gray 329, 342 (1857). "Comprised of citizens who sit independently and in secrecy, the grand jury determine[ ] whether sufficient cause exists to justify requiring a person to undergo the 'public accusation of crime, and ... the trouble, expense and anxiety of a public trial before a jury of his peers.' " Commonwealth v. Riley, 73 Mass. App. Ct. 721, 726, 901 N.E.2d 151 (2009), quoting Jones, supra at 344. In Massachusetts, with respect to "crimes of great magnitude" the right to a grand jury is firmly rooted in and protected by art. 12. Commonwealth v. Stevenson, 474 Mass. 372, 375, 50 N.E.3d 184 (2016), quoting Jones, supra at 347.
Notwithstanding their historic and important role, the grand jury have a limited function -- they are an investigatory and accusatory body only. See Matter of R.I. Select Comm'n Subpoena, 415 Mass. 890, 895, 616 N.E.2d 458 (1993). A grand jury's purpose is not to adjudicate guilt or degrees of guilt. Moran, 453 Mass. at 884 n.7, 906 N.E.2d 343. See Walczak, 463 Mass. at 845, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part), quoting Commonwealth v. Wilcox, 437 Mass. 33, 39, 767 N.E.2d 1061 (2002). In order to indict, a grand jury need only hear sufficient evidence to establish the identity of the accused and to support a finding of probable cause to arrest the accused for the offense charged. Commonwealth v. Rex, 469 Mass. 36, 40, 11 N.E.3d 1060 (2014). "The standard of sufficiency has been defined as whether the grand jury heard reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense" (quotation and citation omitted).
*714 Commonwealth v. Goldstein, 54 Mass. App. Ct. 863, 866, 768 N.E.2d 595 (2002).
A finding of probable cause, however, requires considerably less evidence than that which is required to support a finding of guilt by the petit jury. Commonwealth v. O'Dell, 392 Mass. 445, 451, 466 N.E.2d 828 (1984). See Commonwealth v. Murphy, 68 Mass. App. Ct. 152, 154, 860 N.E.2d 961 (2007) (evidence insufficient to overcome motion for required finding of not guilty may support probable cause for issuance of indictment). In fact, "[p]robable cause to sustain an indictment is a decidedly low standard."
**21 Commonwealth v. Hanright, 466 Mass. 303, 311, 994 N.E.2d 363 (2013), overruled on another ground by Commonwealth v. Brown, 477 Mass. 805, 81 N.E.3d 1173 (2017). Not only is the standard for indictment low, but when reviewing the sufficiency of an indictment, the grand jury evidence must be viewed in the light most favorable to the Commonwealth. See Commonwealth v. Barbosa, 477 Mass. 658, 675, 81 N.E.3d 293 (2017), citing Moran, 453 Mass. at 885, 906 N.E.2d 343.
Grand jury proceedings are not conducted in accordance with the same standards applied to protect a defendant's rights at trial. Grand juries are not strictly bound by the rules of evidence. A grand jury may rely on hearsay in determining whether there is probable cause to indict, Commonwealth v. Washington W., 462 Mass. 204, 210, 967 N.E.2d 615 (2012), and "[i]naccurate testimony made in good faith does not require dismissal of an indictment," Silva, 455 Mass. at 509, 918 N.E.2d 65. There is no duty to present all exculpatory evidence to a grand jury. Commonwealth v. McGahee, 393 Mass. 743, 746, 473 N.E.2d 1077 (1985).
Traditionally, this court has maintained a limited role in reviewing grand jury proceedings. We have not, however, permitted the grand jury to become a mere arm of the prosecution. Although the general rule is that a court should not inquire into the adequacy or competency of the evidence upon which an indictment is based, we have held that "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused ... and probable cause to arrest him" (citation omitted). Commonwealth v. McCarthy, 385 Mass. 160, 163, 430 N.E.2d 1195 (1982).
We also have exercised a greater supervisory role -- on a case-by-case basis -- over the substance of grand jury proceedings in circumstances where the integrity of the grand jury has been impaired. Stevenson, 474 Mass. at 375-376, 50 N.E.3d 184. For example, a prosecutor must "present exculpatory evidence 'that would greatly undermine either the credibility of an important witness or evidence likely to affect the grand jury's decision,' as well as evidence the withholding of which would cause the presentation to be seriously tainted." Commonwealth v. Clemmey, 447 Mass. 121, 130, 849 N.E.2d 844 (2006), quoting Wilcox, 437 Mass. at 37, 767 N.E.2d 1061. The standard is stringent, and even when a prosecutor intentionally withholds evidence, the defendant must demonstrate that the prosecutor's decision "likely affected the grand jury's decision to indict." Clemmey, supra at 131, 849 N.E.2d 844. See, e.g., Commonwealth v. Mayfield, 398 Mass. 615, 634, 500 N.E.2d 774 (1986) (integrity of grand jury proceeding would be impaired if defendant is "put to trial on an indictment **22 which the Commonwealth knows is based in whole or in part on false testimony"); O'Dell, 392 Mass. at 446-447, 466 N.E.2d 828 (dismissing indictment where grand jury proceeding was impaired when grand jurors were presented with portion of statement attributed to defendant, seemingly inculpating him, without exculpatory portion of purported statement that had been excised). These protections *715 are limited by the grand jury's independence, and the defendant bears a heavy burden to show impairment of the grand jury proceeding. Stevenson, 474 Mass. at 376, 50 N.E.3d 184.
As noted, the purpose of the grand jury is to determine probable cause, not guilt and degrees of guilt. See Rex, 469 Mass. at 40, 11 N.E.3d 1060 ; Moran, 453 Mass. at 884 n.7, 906 N.E.2d 343. Requiring prosecutors to give instructions where appropriate invites "Fernandes motions" to dismiss indictments for failure to instruct the grand jury on the use and relevance of exculpatory evidence or defenses. See generally Commonwealth v. Perkins, 464 Mass. 92, 106-109, 981 N.E.2d 630 (2013) (Gants, J., concurring). Such a requirement would encourage prosecutors to introduce more evidence than necessary to establish probable cause and to rebut the exculpatory evidence and anticipated defenses to avoid being challenged for impairing the integrity of the grand jury. This has the potential to create a "mini trial," which would defeat the purpose of a grand jury. Costello, 350 U.S. at 363-364, 76 S.Ct. 406.
A requirement that the grand jury be instructed on mitigation or defenses is "a significant departure from the historic and practical nature of the grand jury[;] it calls on the grand jury to perform more than an accusatory or investigative function, and it needlessly and unfairly burdens police and prosecutors to develop murder cases before learning about a defendant's case through reciprocal discovery. It is more consonant with public justice to sort out these issues at a subsequent trial." Walczak, 463 Mass. at 850-851, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part). For the court to require such instruction represents a fundamental and significant change to grand jury practice in the Commonwealth.
This court has held consistently that any perceived error at the grand jury stage can be cured by the petit jury at trial. See Commonwealth v. McLeod, 394 Mass. 727, 733, 477 N.E.2d 972 (1985), cert. denied sub nom. Aiello v. Massachusetts, 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985) (availability of unprejudiced petit jury at trial obviates need for appellate review of grand jury); Commonwealth v. Geagan, 339 Mass. 487, 499, 159 N.E.2d 870, cert. denied, 361 U.S. 895, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959) (inadmissible evidence before grand jury can be remedied at petit jury stage).
**23 See also Clemmey, 447 Mass. at 131, 849 N.E.2d 844 ("Whether the question of the exemption's inapplicability [or invalidity] may appropriately reemerge at trial has little bearing on the prosecutor's obligation to present to the grand jury certain forms of exculpatory evidence [in his possession] the withholding of which would seriously taint or distort the proceedings"). With this remedy available, creating another layer of procedure at the grand jury stage adds nothing of value.
Much like the case in Walczak, the question here is not whether the integrity of the grand jury was impaired by prosecutorial misconduct that unfairly resulted in an indictment. Rather, the question is whether the failure to instruct the grand jury on potential mitigating factors in the adult defendant's killing of her boyfriend impaired the integrity of the grand jury. A petit jury, which determine guilt, normally would be instructed to return a verdict for the highest crime proved beyond a reasonable doubt against the defendant. See Commonwealth v. Dickerson, 372 Mass. 783, 797, 364 N.E.2d 1052 (1977), overruled on another ground by Commonwealth v. Paulding, 438 Mass. 1, 777 N.E.2d 135 (2002). The grand jury, which are merely an accusatory body that does not determine guilt, do not have greater power than *716 a petit jury in this regard. Walczak, 463 Mass. at 847-848, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part).
Failing to instruct a grand jury about defenses or the impact of mitigating evidence, for which a prosecutor has no legal duty, has not and should not be analyzed under an impaired integrity standard. The impaired integrity standard suggests the presence of intentional prosecutorial misconduct that could result in sanctions. Commonwealth v. Salman, 387 Mass. 160, 167, 439 N.E.2d 245 (1982) (integrity impaired when prosecutor knowingly used false testimony to procure indictment). See Mayfield, 398 Mass. at 639, 500 N.E.2d 774 (Liacos, J., dissenting); O'Dell, 392 Mass. at 446-447, 466 N.E.2d 828. This standard should apply only "when the facts known to the prosecutor ... clearly establish," see Walczak, 463 Mass. at 849, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part), quoting State v. Hogan, 336 N.J. Super. 319, 343, 764 A.2d 1012 (App. Div. 2001), that the instruction would result in "a complete exoneration," yet the prosecutor withholds the instruction, see Walczak, supra, quoting Hogan, supra at 342, 764 A.2d 1012. The decision to further instruct a grand jury is, like the decision to call a particular witness or introduce more or less evidence, a judgment call determined by the unique circumstances presented at the moment.
**24 Here, there is probable cause to support the defendant's indictment for murder and assault and battery with a deadly weapon. The evidence presented to the grand jury shows that the victim died of a stab wound to the neck. The defendant, who was the last person with the victim, ran for help and said to a neighbor, "Well, he hit me, so I hit him." That same neighbor witnessed a clean knife in the kitchen sink. A witness testified that the defendant had admitted to stabbing the victim on a previous occasion. The Commonwealth also presented significant mitigating evidence, comprising testimony from witnesses who observed bruises on the defendant, including on the night of the killing; testimony from the defendant regarding the victim's abusive behavior toward her during their relationship; and the defendant's statement that she acted in self-defense.
"The only question for the grand jury should be whether the evidence was sufficient to support a decision to arrest for murder. Any inquiry and decision beyond that is in the nature of an adjudicatory decision and appropriately should be reserved for the petit jury." Walczak, 463 Mass. at 849, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part).
GANTS, C.J. (dissenting, with whom Lenk, J., joins).
The grand jury in this case heard substantial evidence that the defendant killed the victim in self-defense or used excessive force in self-defense. But the prosecutor provided the grand jury with no legal guidance that would have enabled them to understand the legal significance of this evidence in deciding whether to return an indictment for murder, an indictment for manslaughter, or no indictment at all. The plurality contends that the absence of any such instructions does not require the dismissal of the murder indictment without prejudice because instructions would likely not have resulted in the grand jury issuing a no bill. I believe that the relevant inquiry is not whether the omitted legal instructions likely would have resulted in a no bill, but whether the grand jury's decision to return an indictment for murder, rather than manslaughter, was "probably influenced" by the absence of legal guidance. Commonwealth v. Mayfield, 398 Mass. 615, 621, 500 N.E.2d 774 (1986).
*717 Because I conclude that the grand jury's decision to indict this defendant for murder was probably influenced by the lack of legal instructions concerning self-defense and the excessive use of force in self-defense, I believe that that the indictment should be dismissed **25 without prejudice so that a properly instructed grand jury may consider the evidence. Therefore, I respectfully dissent.
Discussion. 1. The grand jury process. After presenting evidence to a grand jury, a prosecutor offers the grand jury a proposed indictment charging the defendant with a specific crime. The grand jury must then evaluate the presented evidence and decide whether there is probable cause to believe that the defendant committed the crime charged. In doing so, the grand jury must determine whether there is probable cause supporting each required element of the crime. See Commonwealth v. Moran, 453 Mass. 880, 884, 906 N.E.2d 343 (2009) (grand jury must be presented with evidence on each element of crime charged). See also Commonwealth v. Washington W., 462 Mass. 204, 212-213, 967 N.E.2d 615 (2012) (considering whether withheld evidence was material to grand jury's finding of probable cause as to one required element of crime). Where the grand jury so finds, they should return the proposed indictment charging that crime. Where they do not, the grand jury must return a no bill or an indictment charging a lesser crime for which they do find probable cause. Commonwealth v. McCarthy, 385 Mass. 160, 163, 430 N.E.2d 1195 (1982) ("A grand jury finding of probable cause is necessary if indictments are to fulfil their traditional function as an effective protection against unfounded criminal prosecutions" [quotation and citation omitted] ).
Here, the prosecutor presented the grand jury with an indictment charging murder. The language of some indictments sets forth all of the elements of the crime charged, and therefore provides the grand jury with legal guidance regarding the required elements for which probable cause must be found. Compare, e.g., G. L. c. 277, § 79 (form indictment for breaking and entering in nighttime with intent to commit felony) with Commonwealth v. Cabrera, 449 Mass. 825, 827, 874 N.E.2d 654 (2007) (describing elements of breaking and entering in nighttime with intent to commit felony). But the language of a murder indictment, as authorized by statute, does not. See G. L. c. 277, § 79. The indictment here simply alleged that the defendant, on May 7, 2014, "did assault and beat [the victim] with intent to murder him and by such assault and beating did kill and murder [the victim]." In the absence of legal guidance, a reasonable grand juror would understand this language to mean that the required elements of murder are: (1) that the defendant committed an assault and battery against the victim; (2) that, in doing so, the defendant intended to kill the victim; and (3) that the assault and battery caused the victim's death.
**26 But this reasonable understanding, based on the language of the standard murder indictment, is legally incorrect: a required element of the crime of murder is that the defendant committed the killing with malice. See Commonwealth v. Sires, 413 Mass. 292, 296, 596 N.E.2d 1018 (1992) ("malice is what makes an unlawful killing murder"). Malice may be proved by establishing any one of three prongs: (1) that the defendant intended to kill the victim; (2) that the defendant intended to inflict grievous bodily harm on the victim; or (3) that the defendant intended "to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would follow" (citation omitted).
*718 Commonwealth v. Williams, 475 Mass. 705, 712, 60 N.E.3d 335 (2016). But a killing is not committed with malice where it is committed in the heat of passion on reasonable provocation, where it is induced by sudden combat, or where the defendant uses excessive force in self-defense. See Commonwealth v. Camacho, 472 Mass. 587, 602, 36 N.E.3d 533 (2015). Because a grand jury must be presented with evidence supporting a finding of probable cause with regard to each element of the crime charged, see Moran, 453 Mass. at 884, 906 N.E.2d 343, a grand jury may not return a murder indictment unless they find probable cause to believe that the defendant killed the victim with malice. If the grand jury were to conclude that the defendant intended to kill the victim but that there was not probable cause to believe that she did so with malice, either because she used excessive force in self-defense or because she acted in the heat of passion on reasonable provocation or in sudden combat, they could indict the defendant for manslaughter but not for murder.[1]
Moreover, the language of the indictment does not inform the grand jury that lawful self-defense is a complete defense. This **27 means that even if there is probable cause to believe (1) that the defendant committed an assault and battery against the victim; (2) that, in doing so, the defendant intended to kill the victim; and (3) that the assault and battery caused the victim's death, the defendant may not be indicted for any homicide offense if the grand jury conclude that the defendant committed the killing in lawful self-defense (or, more precisely, conclude that there is not probable cause to believe that the defendant was not acting in lawful self-defense when she killed the victim). See Commonwealth v. Little, 431 Mass. 782, 787, 730 N.E.2d 304 (2000) ("self-defense, if warranted by the circumstances and carried out properly, constitutes a complete defense").
2. Exculpatory evidence. The grand jury in this case heard substantial evidence to support a finding that the defendant acted in lawful self-defense or, alternatively, that she used excessive force in self-defense. The grand jury learned that the defendant was engaged to be married to the victim, that she immediately reported the stabbing to her neighbors, that she appeared hysterical following the stabbing, and that, when asked what had happened, she told her neighbor that "he hit me, so I hit him." The grand jury further learned that the defendant, soon after the victim was stabbed, informed police officers that the victim had threatened her with a gun and choked her immediately prior to the stabbing. And the grand jury heard substantial evidence in support of this self-defense claim: police officers located a gun on the couch at the residence; an officer noticed fresh bruises on the defendant's face and *719 arm; the defendant had previously disclosed that the victim was physically abusive and had placed a gun in her mouth on multiple occasions; and the victim, days before the killing, had sent text messages to the defendant saying "I'm going to fucking kill you" and "You're dead."
The significance of this exculpatory evidence is reflected in the fact that the Commonwealth, which was familiar with the circumstances of this case and with the law of murder and manslaughter, decided to charge the defendant with manslaughter in its complaint.
3. Impairment of the integrity of the grand jury. If the Commonwealth had sought an indictment for murder without disclosing any of the above-described surrounding circumstances to the grand jury (which, to the Commonwealth's credit, did not take place here), I believe there can be no doubt that the prosecutor would have impaired the integrity of the grand jury by failing to **28 present to them exculpatory evidence " 'likely to affect the grand jury's decision,' as well as evidence the withholding of which would cause the presentation to be seriously tainted." See Commonwealth v. Clemmey, 447 Mass. 121, 130, 849 N.E.2d 844 (2006), quoting Commonwealth v. Wilcox, 437 Mass. 33, 37, 767 N.E.2d 1061 (2002). See also Commonwealth v. O'Dell, 392 Mass. 445, 449, 466 N.E.2d 828 (1984) (dismissing indictment where failure to introduce exculpatory evidence impaired integrity of grand jury). Yet the plurality opinion concludes that even where the prosecutor sought an indictment for murder despite substantial evidence of self-defense and the excessive use of force in self-defense, the prosecutor had no obligation to provide the grand jury with any legal guidance regarding lawful self-defense or the excessive use of force in self-defense, or regarding the required elements of the crime of murder.[2]
I believe that the prosecutor's obligation to furnish the grand jury with exculpatory evidence likely to affect the grand jury's decision includes the obligation to provide instructions enabling them to understand the legal significance of that evidence.[3] See Commonwealth v. Walczak, 463 Mass. 808, 839, 979 N.E.2d 732 (2012) (Gants, J., concurring) ("Evidence of mitigating circumstances ... is meaningless to a grand jury that have not been provided with the guidance necessary to understand its legal significance"). In other words, I believe that if it would be an O'Dell violation for a prosecutor to conceal significant exculpatory evidence from the grand jury in a murder case, it should be a Fernandes violation for a prosecutor to fail to explain the legal significance of that evidence, and I believe that either violation warrants dismissal of the indictment without prejudice. I reach this conclusion because, where mitigating or exculpatory evidence is so significant *720 that it must be introduced to avoid impairing the integrity of the grand **29 jury proceedings, failure to explain the legal relevance of this evidence "probably influenced" the grand jury's decision to indict the defendant for murder and not manslaughter.[4] Mayfield, 398 Mass. at 621, 500 N.E.2d 774.
In reaching the contrary conclusion that instructions need to be provided only where they would likely result in a no bill, the plurality makes five errors.
a. Overstatement of existing case law. First, the plurality contends that my definition of what probably influences a grand jury's decision to indict "does not comport with our case law." Ante at ----, 130 N.E.3d 696. In fact, however, a majority of this court has never decided whether instructions on mitigating circumstances and defenses are necessary where the Commonwealth seeks to indict an adult defendant for murder and where there is substantial evidence that the defendant acted in self-defense or used excessive force in self-defense. See Commonwealth v. Grassie, 476 Mass. 202, 219, 65 N.E.3d 1199 (2017) (declining to address this issue). As the plurality acknowledges, "we provided only limited guidance regarding legal instructions furnished to grand juries" prior to holding in Walczak, 463 Mass. at 810, 979 N.E.2d 732, that prosecutors are required to instruct the grand jury on the elements of murder and on the significance of mitigating circumstances and defenses **30 where the Commonwealth seeks to indict a juvenile for murder despite substantial evidence of mitigating circumstances or defenses. Ante at ----, 130 N.E.3d 696. The question presented here, therefore, cannot be answered simply by applying our existing case law. It is presumably for this reason that the plurality relies in large part on an out-of-state case, State v. Hogan, 336 N.J. Super. 319, 764 A.2d 1012 (2001), decided by the Appellate Division of the New Jersey Superior Court, in arguing that instructions need be provided only when they would likely result in a no bill. See ante at ----, ----, ----, 130 N.E.3d 696.
b. Oversimplification of grand jury's decision. Second, the plurality treats the grand jury's decision as binary: whether to indict the defendant for a crime or to return a no bill. The indictment presented *721 to a grand jury, however, does not charge a generic crime -- it charges a specific crime, with specific required elements. See Commonwealth v. Fryar, 414 Mass. 732, 744, 610 N.E.2d 903 (1993), S.C., 425 Mass. 237, 680 N.E.2d 901, cert. denied, 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997) (Commonwealth must present grand jury with "enough evidence to establish probable cause to believe that the defendant committed the crime charged" [emphasis added] ). It is therefore up to the grand jury to determine not only whether the defendant committed a crime, but which, if any, particular crime is supported by probable cause. See Vasquez v. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) ("In the hands of the grand jury lies the power to charge a greater offense or a lesser offense").
The plurality's oversimplified approach to the grand jury's role leads it to conclude that a lack of instructions "would likely have affected the grand jury's decision to indict," Clemmey, 447 Mass. at 130, 849 N.E.2d 844, only where such instructions would have informed the grand jury of what likely would have been a complete defense. Ante at ----, 130 N.E.3d 696. This standard fails to recognize the immense difference between a manslaughter and a murder indictment where the grand jury finds that only the former is supported by probable cause. If convicted of murder, the defendant will be sentenced to life in prison and, if convicted of murder in the first degree, will have no possibility of parole. See G. L. c. 265, § 2 (a ), (c ). In contrast, if the defendant is convicted of manslaughter, she faces a maximum sentence of twenty years in prison, with no minimum mandatory sentence. See G. L. c. 265, § 13. Of course, a murder indictment will not necessarily result in a murder conviction. But the stark difference between murder and manslaughter may affect not only the defendant's sentence upon conviction, but also the defendant's decision whether to plead guilty or go to trial. Some **31 defendants, even if they are not guilty, may be unwilling to risk a life sentence without the possibility of parole where the Commonwealth is willing to accept a guilty plea to murder in the second degree or manslaughter. They may be more willing to risk trial, however, where the grand jury indict them for manslaughter rather than murder.
Furthermore, an indictment for manslaughter as opposed to murder is likely to yield more favorable plea options for a defendant, as the Commonwealth will no longer possess the threat of a life sentence as a negotiating tool. "In today's criminal justice system," where "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant," Missouri v. Frye, 566 U.S. 134, 144, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), this calculus is critical. And importantly, it takes place before the petit jury enter the equation to "weigh the mitigating and exculpatory evidence" and "determine whether the defendant is guilty beyond a reasonable doubt of murder or voluntary manslaughter, or not guilty of any offense." Ante at ----, 130 N.E.3d 696. I therefore believe that the grand jury's decision to indict is affected not only where legal instructions likely would have resulted in a no bill, but also where the grand jury's decision to issue an indictment for murder (as opposed to manslaughter) was "probably influenced" by the lack of legal guidance. Mayfield, 398 Mass. at 621, 500 N.E.2d 774. This standard reflects the grand jury's responsibility to decide whether the particular crime charged is supported by probable cause. See Vasquez, 474 U.S. at 263, 106 S.Ct. 617.
c. Distinction between mitigating and exculpatory evidence. Third, the plurality *722 contends that grand jury proceedings are not impaired where omitted instructions relate to evidence that is "merely mitigating and not wholly exculpatory." Ante at ----, 130 N.E.3d 696. I agree with the plurality that mitigating evidence is evidence that might reduce the gravity of the offense, while exculpatory evidence is evidence that might absolve the defendant from guilt altogether. See ante at note 2. But when it comes to the Commonwealth's duty to disclose evidence to a grand jury considering an indictment for murder, I believe that this is a distinction without a meaningful difference.
Because mitigating evidence tends to cast doubt on the Commonwealth's proof regarding an essential element of a crime for which the Commonwealth seeks an indictment, it is exculpatory as to that crime, and may cause a grand jury to conclude that only **32 a lesser crime is supported by probable cause.[5] See Walczak, 463 Mass. at 822-823, 979 N.E.2d 732 (Lenk, J., concurring) (requirement that significant, probably influential mitigating or exculpatory evidence be presented to grand jury "assures that it can be considered by them in evaluating whether there is probable cause to return either the indictment sought or one for a lesser offense, or to return a no bill"); id. at 839, 979 N.E.2d 732 (Gants, J., concurring) ("A grand jury are entitled to hear such evidence where it is substantial and may be important to their decision whether to indict for murder or voluntary manslaughter"). Here, where the prosecutor presented a murder indictment to the grand jury, so-called mitigating evidence suggesting that the defendant did not commit the killing with malice because she acted in self-defense or used excessive force in self-defense is exculpatory as to the crime of murder. It must therefore be presented and explained to the grand jury where, as here, failure to do so probably influenced their decision to indict the defendant for murder.
d. Grand jury's role in the criminal process. Fourth, the plurality's opinion fails to honor the constitutional and statutory role of the grand jury. See Jones v. Robbins, 8 Gray 329, 342-349 (1857) (under art. 12 of Massachusetts Declaration of Rights, crimes punishable by term in State prison require grand jury indictment); G. L. c. 263, § 4. The plurality, of course, is correct that the grand jury determine only probable cause, leaving it to the petit jury to determine whether the evidence at trial proves the defendant guilty of the crime charged beyond a reasonable doubt. The plurality is also correct that a defendant is not entitled to have the grand jury return the lowest possible charge; rather, the Commonwealth **33 may instruct the grand jury to return an indictment for the charge *723 presented, provided they find that the required elements of that charge are supported by probable cause. See Walczak, 463 Mass. at 841 n.3, 979 N.E.2d 732 (Gants, J., concurring); id. at 847-848, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part). And the plurality also is correct that, where the grand jury indict a defendant for murder, the petit jury may find the defendant not guilty of murder in the first degree but guilty of the lesser included crimes of murder in the second degree or manslaughter.
But the grand jury are not a mere rubber stamp required to approve any indictment brought by the Commonwealth. The prosecutor controls which indictment to present to the grand jury, but the grand jury control whether to return that indictment. See Vasquez, 474 U.S. at 263, 106 S.Ct. 617. Where they find that there is not probable cause to support a required element of a proposed charge, they should return a no bill or an indictment for a lesser included offense. In the context of this case, this means that if the grand jury found that there was not probable cause to support a finding of malice because the defendant used excessive force in self-defense, the grand jury could return an indictment for manslaughter but not for murder.
The grand jury cannot perform their constitutional or statutory role of determining probable cause if they are deprived of important exculpatory evidence or of the legal guidance they need to understand that exculpatory evidence. "In contrast to a reviewing court's evaluation of the sufficiency of the evidence, which views the evidence in the light most favorable to the prosecution, a grand jury need not view the evidence in so favorable a light in deciding probable cause." Walczak, 463 Mass. at 841 n.3, 979 N.E.2d 732 (Gants, J., concurring). Even where the evidence is legally sufficient to support an indictment for murder, as it was here, the circumstances of the killing may cause a grand jury to conclude that the credible evidence is insufficient to support a finding of probable cause as to the element of malice. See ibr.US_Case_Law.Schema.Case_Body:v1">id. Where they so find after being properly instructed, the highest crime supported by probable cause is voluntary manslaughter. See id. A grand jury cannot reasonably decide whether there is probable cause to support a finding of malice, however, where substantial exculpatory evidence is unaccompanied by instructions explaining the elements of murder and, as relevant here, the legal consequences of acting in self-defense or using excessive force in self-defense.
It is true, as the plurality acknowledges, that prosecutors are required to provide the grand jury with legal instructions when **34 the grand jury so requests. See ante at ----, 130 N.E.3d 696, citing Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999). But there is no reason to expect grand jurors to recognize that the elements in the murder indictment are not the required elements of murder, or to know enough about the law of homicide to ask the prosecutor to explain the element of malice. "It ... makes no sense for a prosecutor to owe a duty to provide such a legal instruction only where the grand jury know enough about the law of homicide to ask for such an instruction." Walczak, 463 Mass. at 839, 979 N.E.2d 732 (Gants, J., concurring). "The law of homicide," after all, "is too complex reasonably to expect a grand jury to know the legal significance of reasonable provocation or sudden combat [or excessive use of force in self-defense] without instruction by a prosecutor, or even to recognize that it may be an issue for which they should seek legal guidance." Id. at 839-840, 979 N.E.2d 732. *724 e. Exculpatory evidence related to self-defense. Fifth, the plurality acknowledges that there may be circumstances where "the absence of instructions on a complete defense would make a difference in the grand jury's determination to hand up an indictment," and therefore where a prosecutor must instruct the grand jury on self-defense. Ante at ----, 130 N.E.3d 696. But the plurality goes on to determine that in this case, no instruction on self-defense was required because its absence likely did not make a difference in the grand jury's determination to return an indictment. This is troubling, first, because the grand jury heard substantial evidence of self-defense -- namely, that the victim had a history of physically abusing the defendant, that the victim had beaten the defendant leading up to the stabbing, and that the victim was stabbed only after he attacked the defendant with weapons. If this type of evidence does not suffice to require prosecutors to provide the grand jury with instructions on the issue of self-defense, it is not apparent what circumstances would.[6]
Equally troubling is the fact that the plurality, by requiring instructions only on complete defenses, asks prosecutors to do the **35 impossible: clearly distinguish between evidence of lawful self-defense and evidence of excessive use of force in self-defense. See ante at note 11 (prosecutors obligated "to discern where substantial exculpatory evidence they have presented gives rise to a defense that could reasonably result in a no bill, and to instruct the grand juries accordingly"). As the plurality acknowledges, however, exculpatory evidence showing that the defendant acted in lawful self-defense necessarily overlaps with exculpatory evidence showing that the defendant used excessive force while acting in self-defense. See Commonwealth v. Johnson, 412 Mass. 368, 372, 589 N.E.2d 311 (1992) ("self-defense is not an all or nothing proposition ... once the issue of self-defense has been fairly raised, the jury should be instructed on the legal consequence of using manifestly disproportionate violence in the supposed exercise" of self-defense [quotations, citations, and alteration omitted] ).
4. Implications of proposed standards. The plurality declares that, unless the defendant is a juvenile, prosecutors have no obligation to instruct the grand jury on the elements of the charged offense and lesser offenses even where there is powerful exculpatory evidence that likely would make a difference in the grand jury's determination to return an indictment for murder rather than manslaughter. Yet, the plurality then "strongly encourage[s] district attorneys making grand jury presentments"
*725 to consider instructing the grand jury "on the elements of lesser offenses and/or defenses, where such instructions would be in the interest of justice or would assist the grand jurors to understand the legal significance of mitigating circumstances and defenses." Ante at note 1, quoting Supreme Judicial Court Committee on Grand Jury Proceedings, Final Report to the Justices, at 13 (June 2018) (Grand Jury Report). I, too, strongly encourage district attorneys to provide these instructions, but I do so because I recognize that failing to provide instruction where there is substantial exculpatory evidence may impair the integrity of the grand jury.
**36 The plurality's approach -- encouraging prosecutors to provide legal instructions where there is substantial exculpatory and mitigating evidence but not penalizing a failure to do so unless instructions would likely have resulted in a no bill -- is unlikely to have its intended effect. Previously, we had left to another day the question whether an adult defendant indicted for murder could have his or her indictment dismissed due to a lack of legal instructions on mitigating circumstances and defenses. See Grassie, 476 Mass. at 219, 65 N.E.3d 1199. A prudent prosecutor thus may have thought that providing instructions was the safer route. Now, however, prosecutors will know that there will rarely be consequences for failing to instruct on mitigating circumstances and defenses, even where substantial evidence of self-defense or excessive use of force in self-defense is presented. I am therefore skeptical that the number of prosecutors who choose to provide legal guidance without being requested to do so by the grand jury will increase, despite the plurality's suggested best practice.
Moreover, if prosecutors come to the grand jury unprepared to furnish legal instructions, grand jurors will be less able to fulfill their constitutional function, and the risk that a prosecutor will inadvertently misstate the law in answer to a grand juror's question will be greater. And that error itself creates a risk that the indictment will be dismissed. After our decision in Grassie, 476 Mass. at 220, 65 N.E.3d 1199, the entirety of the grand jury proceeding apart from deliberations must "be recorded in a manner that permits reproduction and transcription." This includes "any legal instructions provided to the grand jury by a judge or a prosecutor in connection with the proceeding." Id. If the prosecutor's legal instructions are substantially incorrect or misleading, the error might require dismissal of the indictment without prejudice upon review of the recorded proceeding. See Noble, 429 Mass. at 48, 707 N.E.2d 819 (where information was requested, "prosecutor should have provided the appropriate information" [emphasis added] ); United States v. Stevens, 771 F. Supp. 2d 556, 567 (D. Md. 2011) ("where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts grave doubt that the decision to indict was free from the substantial influence of the erroneous instruction" [quotation and citation omitted] ); United States v. Peralta, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (dismissing indictment where prosecutor, among other errors, presented grand jury with "misleading statements of law").
**37 My conclusion that the integrity of the grand jury proceedings was impaired and that the murder indictment must therefore be dismissed does not mean that the Commonwealth may not again obtain a murder indictment. In the absence of egregious prosecutorial misconduct, which has not been alleged here, the remedy would be a dismissal without prejudice. See O'Dell, 392 Mass. at 447, 466 N.E.2d 828. This means that the Commonwealth, which has *726 already presented evidence in this case to multiple grand juries, could present the evidence and appropriate legal instructions to another grand jury, and then ask that grand jury to return a murder indictment.
The obligation to provide guidance regarding the legal significance of mitigating or exculpatory evidence imposes only a modest burden on prosecutors. See Walczak, 463 Mass. at 833, 979 N.E.2d 732 (Lenk, J., concurring) ("instructional requirement imposes scant burden on the Commonwealth"). It applies only where there exists exculpatory or mitigating evidence of such significance that withholding it from the grand jury would impair the proceeding's integrity. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 822, 979 N.E.2d 732 (Lenk, J., concurring); ibr.US_Case_Law.Schema.Case_Body:v1">id. at 839, 979 N.E.2d 732 (Gants, J., concurring). The Supreme Judicial Court Committee on Grand Jury Proceedings, which was created to help the court "gain[ ] a better understanding of current practices employed by the various district attorneys and the Attorney General" in grand jury proceedings, Grassie, 476 Mass. at 219, 65 N.E.3d 1199, noted in its final report that "[m]any District Attorney offices currently instruct the grand jury on the elements of the offense, especially where the elements are not apparent from the language of the indictment or are not offenses commonly presented to the grand jury."[7] Grand Jury Report, supra at 28.
The burden on prosecutors is even less when one recognizes that a prosecutor should already be prepared to provide appropriate legal instructions if a grand juror were to ask about the legal significance of exculpatory or mitigating evidence. See Noble, 429 Mass. at 48, 707 N.E.2d 819. And the frequency of such grand juror **38 questions may increase after the issuance of this opinion, because I join the plurality in their conclusion that Superior Court judges during the empanelment of grand juries can and should inform prospective grand jurors that they are entitled to ask prosecutors about the elements of the crime charged in each indictment, as well as to request guidance on lesser included crimes and defenses when they are presented by the evidence. See ante at note 15. If grand jurors' requests for instructions increase, the modest burden imposed by a requirement that instructions be presented in certain limited circumstances would only decrease.
Furthermore, when presenting before the grand jury, the prosecutor need not provide legal guidance "with the same degree of precision that is required when a petit jury [are] instructed on the law" (citation omitted). Walczak, 463 Mass. at 835, 979 N.E.2d 732 (Lenk, J., concurring). Instead, "use of the Model Jury Instructions on Homicide, modified as appropriate for use before the grand jury, to define the elements of the crime charged and set out the legal requirements of defenses or mitigating circumstances raised by the evidence will ordinarily be sufficient." Id.
Nor can it fairly be said that imposing this obligation constitutes an unwarranted intrusion on the discretion of a prosecutor. The grand jury is "an integral part of the *727 court," and judges have a "duty to prevent interference with [grand jurors] in the performance of their proper functions, to give them appropriate instructions, and to assist them in the performance of their duties" (citation omitted). Matter of Pappas, 358 Mass. 604, 613, 266 N.E.2d 297 (1971), aff'd sub nom. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). We have long recognized that a prosecutor does not have the discretion to conceal important exculpatory or mitigating evidence where doing so would impair the integrity of the grand jury. See Walczak, 463 Mass. at 822, 979 N.E.2d 732 (Lenk, J., concurring); Wilcox, 437 Mass. at 37, 767 N.E.2d 1061 ; Mayfield, 398 Mass. at 620-621, 500 N.E.2d 774 ; O'Dell, 392 Mass. at 449, 466 N.E.2d 828. We recognized more recently that a prosecutor, at least in juvenile murder cases, does not have the discretion to impair the integrity of a grand jury by failing to provide legal instructions necessary for the grand jury to recognize the legal significance of such evidence. See Walczak, 463 Mass. at 810, 979 N.E.2d 732. "By providing legal instructions[,] the prosecutor enables the grand jury to meaningfully apply the facts to the law, thus assisting the grand jury to fulfill its role as a 'bulwark of individual liberty and a fundamental protection against despotism and persecution.' " Grand Jury Report, supra at 22, quoting Wilcox, 437 Mass. at 34, 767 N.E.2d 1061. **39 I therefore do not believe that requiring prosecutors to provide legal instructions in the narrow circumstances described herein improperly encroaches on the Commonwealth's role in the indictment process.
There is little reason to fear that application of my proposed standard will yield a floodgate of motions to dismiss indictments, or will otherwise significantly burden Superior Court judges. No doubt, comparable fears were aired when this court allowed defendants to challenge the sufficiency of the evidence of probable cause in McCarthy, 385 Mass. at 162-163, 430 N.E.2d 1195, and the concealment of exculpatory evidence in O'Dell, 392 Mass. at 449, 466 N.E.2d 828, and those fears ultimately proved groundless. There are at least three reasons to believe that comparable fears will prove equally groundless here.
First, as already noted, a prosecutor's obligation to provide guidance regarding the legal significance of important exculpatory or mitigating evidence is triggered only in that fraction of cases where such evidence exists.
Second, such motions to dismiss are unlikely to prevail. So long as prosecutors provide the grand jury with proper legal guidance where necessary, there is little risk of error warranting dismissal of the indictment. In fact, the risk of error will be diminished if prosecutors initiate such legal instructions themselves rather than wait for a legal question from the grand jury, which they may be less prepared to answer.
Third, in the absence of egregious prosecutorial misconduct, the allowance of a motion to dismiss will result only in the dismissal of the indictment without prejudice; the Commonwealth may seek the same indictment from a different grand jury by presenting the same evidence and furnishing the required legal guidance. See O'Dell, 392 Mass. at 447, 466 N.E.2d 828. Consequently, unless there is a significant chance that a new grand jury will return a no bill or indict the defendant on a lesser charge if properly instructed, defendants will incur little benefit from bringing such a motion.
Finally, the Commonwealth contends that the Superior Court judge improperly relied on Walczak to dismiss the murder indictment because our decision in *728 Walczak obligated the Commonwealth to provide legal instructions only in future juvenile murder cases where there was substantial evidence of mitigating circumstances or defenses presented to the grand jury. See Walczak, 463 Mass. at 810, 979 N.E.2d 732. This obligation, the Commonwealth argues, did not apply to cases such as this one, where the Commonwealth sought **40 to indict an adult for murder.[8] In Walczak, however, we affirmed the judge's dismissal of the juvenile's murder indictment even though we applied the court's newly-created rule regarding required legal instructions only to future juvenile cases. Id. There would be nothing unfair about doing the same here with respect to an adult murder indictment.
In fact, the importance of such legal guidance to the interests of justice was demonstrated in the Walczak case. Without legal instruction, the grand jury indicted the juvenile for murder. See Walczak, 463 Mass. at 809, 979 N.E.2d 732. After the indictment was dismissed without prejudice due to the absence of instructions on the law distinguishing murder from manslaughter, the grand jury indicted the juvenile for manslaughter. The defendant was subsequently found not guilty of this charge following a Juvenile Court jury trial.
Conclusion. I would hold that the integrity of the grand jury proceedings was impaired by the Commonwealth's failure to provide legal instructions concerning self-defense and the excessive use of force in self-defense. Because the grand jury's decision to return an indictment for murder was "probably influenced" by the absence of this legal guidance, see Mayfield, 398 Mass. at 621, 500 N.E.2d 774, I would dismiss the indictment without prejudice and allow a grand jury with proper legal instruction to decide whether the defendant should be indicted and, if so, whether the indictment should be for murder or manslaughter. For these reasons, I dissent.

I agree with the distinction between mitigating and exculpatory evidence set forth in Justice Budd's opinion -- the former term refers to evidence that, if believed, could reduce the gravity of the offense, while the latter refers to evidence that, if believed, could absolve the defendant from guilt altogether. See ante at note 2.

Unless, of course the grand jury request further instruction.

I recognize, as does the plurality, see ante at ----, 130 N.E.3d 696, that the statutory form of an indictment for murder, G. L. c. 277, § 79, is sufficient to charge murder in the first degree under any theory, and "encompasses lesser included offenses such as murder in the second degree and manslaughter." Commonwealth v. DePace, 442 Mass. 739, 743, 816 N.E.2d 1215 (2004), cert. denied, 544 U.S. 980, 125 S.Ct. 1842, 161 L.Ed.2d 735 (2005). But that does not mean that the Legislature intended that a murder indictment be brought where there is probable cause only of manslaughter. There is a separate statutory form for a manslaughter indictment. See G. L. c. 277, § 79 ("That A.B. did assault and beat C.D., and by such assault and beating did kill C.D."). In fact, the statutory form of a murder indictment distinguishes between first- and second-degree murder, identifying additional language that may be used where the prosecutor seeks an indictment for murder in the second rather than in the first degree. Id. The language used in the indictment in this case charged murder in the first degree.

The plurality does not address whether it would have impaired the integrity of the grand jury for the prosecutor in this case not to present the above-described evidence of the victim's abuse of the defendant. The plurality therefore implicitly assumes that legal instructions would not have been necessary even if the substantial evidence of self-defense and excessive use of force in self-defense was required to be presented to the grand jury.

I note, as the court did in Commonwealth v. Walczak, 463 Mass. 808, 810, 979 N.E.2d 732 (2012), that the Commonwealth need not present grand juries with evidence or legal instructions concerning a defendant's mental impairment or lack of criminal responsibility. This is because a prosecutor during grand jury proceedings is unable to obtain a court order requiring the defendant to submit to a psychiatric examination. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 842 n.4, 979 N.E.2d 732 (Gants, J., concurring), citing Mass. R. Crim. P. 14 (b) (2), as appearing in 442 Mass. 1518 (2004); Blaisdell v. Commonwealth, 372 Mass. 753, 765-766, 364 N.E.2d 191 (1977).

The plurality contends that the language in Commonwealth v. Mayfield, 398 Mass. 615, 621, 500 N.E.2d 774 (1986), which asks whether the grand jury's decision to indict was "probably influenced" by a prosecutor's actions, does not support my position because in that case, "the relevant inquiry [was] 'whether, if a grand jury had been told the true facts, it probably would not have indicted the defendant,' (emphasis added), not whether it would have indicted the defendant for a lesser offense." Ante at note 7, quoting Mayfield, supra. In Mayfield, supra at 619, 500 N.E.2d 774, however, there was no reason for the court to consider the possibility of indictment for a lesser offense -- Mayfield argued that the integrity of the grand jury was impaired by the presentation of false inculpatory evidence relevant to the question whether he killed the eleven year old victim; he did not claim to have acted in self-defense or under any mitigating circumstance. Therefore, an indictment for manslaughter would have been entirely unsupported by the evidence, and the defendant could show "probable prejudice in the grand jury proceedings" only by demonstrating the likelihood of a no bill. Id. at 622, 500 N.E.2d 774. Here, in contrast, there was abundant evidence before the grand jury that the defendant was responsible for the victim's death, but there was also considerable evidence that she acted in self-defense or used excessive force in self-defense. In light of that evidence, whether the grand jury's decision was "probably influenced" by the failure to present instructions, and therefore whether the lack of instructions "probably made a difference" and resulted in "probable prejudice," depends not only on the possibility of a no bill, but also on the possibility of an indictment for manslaughter. Id. at 621-622, 500 N.E.2d 774.

It is perhaps for this reason that we have always included mitigating evidence within the over-all rubric of exculpatory evidence, and imposed obligations on the prosecutor to reveal both. Cf. Commonwealth v. Bly, 448 Mass. 473, 485, 862 N.E.2d 341 (2007) (exculpatory evidence extends "beyond alibi and proof of innocence" to "all evidence that is of significant aid to [the defendant's] case, 'whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness' " [citations omitted] ); Mass. R. Prof. C. 3.8 (d), as appearing in 473 Mass. 1301 (2016) (prosecutor in criminal case must "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense"); Rule 116.2(a)(1) of the Local Rules of the United States District Court for the District of Massachusetts (eff. Feb. 1, 2012) ("Exculpatory information is information that is material and favorable to the accused and includes ... information that tends to ... cast doubt on defendant's guilt as to any essential element in any count in the indictment ...").

The plurality acknowledges that such evidence "could have been seen as exculpatory," but goes on to conclude that the grand jury's decision to indict the defendant was probably not affected by a lack of instructions because the "exculpatory evidence was weakened substantially by the contrasting evidence of the defendant's own violent temper and controlling behavior toward -- and physical abuse of -- the victim." Ante at ----, ----, 130 N.E.3d 696. Although evidence of the defendant's previous actions may have been relevant to the grand jury's probable cause determination, the evidence of self-defense presented to the grand jury was significant enough that the grand jury should have been allowed to evaluate it in light of the law governing self-defense.
The plurality also cites to out-of-State cases to argue that a complete exoneration was not likely here because "[t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." Ante at ----, 130 N.E.3d 696, quoting Yousefian v. Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015). Of course, I agree that the grand jury may find probable cause that the defendant committed murder even after hearing evidence of self-defense. This decision should be left for the grand jury to make, however, after they have been properly instructed.

According to the report, two out of twelve offices provide individual instructions as to the elements of the offense charged in every case. Supreme Judicial Court Committee on Grand Jury Proceedings, Final Report to the Justices, at 33 (June 2018) (Grand Jury Report). Four offices describe the elements of common crimes at the outset of the grand jury's term; two rely on the language of the indictment to describe the elements; two provide instructions only when required under Walczak, 463 Mass. at 810, 979 N.E.2d 732, or Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999) ; and one has no set practice. Grand Jury Report, supra. The remaining office's practices are not described in the Grand Jury Report.

I note that the argument in my concurring opinion in Walczak -- that legal instruction should be required where there is evidence of mitigating circumstances that is so substantial that its omission would impair the integrity of the grand jury, regardless of whether the defendant is a juvenile or an adult -- was joined by two other Justices, and that a fourth Justice, Justice Lenk, declined to address whether the holding in Walczak should extend to adult murder cases. Walczak, 463 Mass. at 837, 979 N.E.2d 732 (Gants, J., concurring, with whom Botsford and Duffly, JJ., joined). See id. at 833, 979 N.E.2d 732 (Lenk, J., concurring). In Commonwealth v. Grassie, 476 Mass. 202, 219, 65 N.E.3d 1199 (2017), the court left to another time the question whether to expand the Walczak holding to adults.